JAMES B. McMINN, Executor of the Last Will and Testament of William S. Reese, Deceased *v.* GEO. D. BLISS, and JOHN O'CONNELL, and HARRY O. GOUGH *et als.*

Forcible Entry and Detainer Cases pending December 31st, 1863.—The new County Courts, as organized under the amended Constitution, January 1st, 1864, had authority to proceed, try, and determine appeals in cases of forcible entry and detainer pending in the old County Courts on the last day of December, 1863.

Construction of Statutes.—Two statutes upon the same subject matter, passed at different times, which are in *pari materia,* must be read and construed as one Act.

Effect of Repeal of a Statute on Pending Action.—A repeal of a statute under which alone a right of action exists, operates as an extinguishment of actions pending when the repeal takes effect, unless there is a subsequent law which enables the Court to try and determine them.

Complaint charging Forcible Entry and Detainer.—If the complaint charges a forcible entry with a multitude of people, and a forcible and unlawful detainer, the forcible entry is the gist of the action.

Evidence of Forcible Entry.—The evidence must tend to prove an entry by defendants with strong hand, with unusual weapons, or with menace of life or limb, or they cannot be convicted of a forcible entry.

Evidence of Forcible Detainer.—There must be evidence tending to prove an actual exhibition of force to retain possession, and of present ability and disposition to use it, to warrant a conviction of a forcible detainer.

Appeal from the County Court, City and County of San Francisco.

The plaintiff averred in his complaint that his testator before his decease, and plaintiff as executor after his death, were each in possession of certain tracts of land in the City of San Francisco, described as follows:

First—Beginning at a point on the southerly line of Jackson street, where began a fence erected by said Reese in his lifetime, one hundred feet, more or less, westerly from Polk street, on said southerly line of Jackson street; running thence southerly along the line of said fence south eight degrees east to the northerly line of Washington street; thence westerly along the northerly line of Washington street to Van Ness Avenue; thence northerly along the easterly line of Van Ness Avenue to the southerly line of Jackson

street; thence easterly along the southerly line of Jackson street to the place of beginning.

Second—Also, all that certain other piece or block of land, bounded by Van Ness Avenue on the east, Jackson street on the north, Franklin street on the west, and Washington street on the south.

Third—Also, all of the land bounded by Jackson street on the north, Franklin street on the east, Washington street on the south, and extending westwardly toward Gough street two hundred and thirty-one feet and nine inches.

The forcible entry and detainer were alleged to have occurred on the 28th of November, 1863.

The evidence for plaintiff tended to show that on the 11th of April, 1863, Reese, the testator of plaintiff, was placed in possession of the disputed premises by the Sheriff by virtue of a writ of restitution, issued on a judgment in ejectment recovered by Reese against David Mahoney and several other parties. Neither Bliss nor O'Connell were defendants in this action. The evidence further tended to show that Reese placed substantial fences around the premises after thus being placed in possession, and that after his death in May, 1863, plaintiff, as his executor, succeeded to his possession, and that neither Reese nor plaintiff had any house on the land, but their possession was such as they acquired by fencing and exercising control over the land.

The plaintiff's evidence also tended to prove that the last of November, 1863, defendants Bliss and O'Connell went on to the land, took possession, and erected a small cabin on it, and a small slaughter house for butchering, and removed a part of the fence, and that within a day or two thereafter, and on the 28th of November, the plaintiff and his attorney, and two or three others, went to the land to retake possession of it, and found Gough, an employé of Bliss and O'Connell, on the land, and that they asked Gough who had done it, and he replied he had done it all at the request of Bliss and O'Connell; and that plaintiff's attorney then told Gough that they had come to retake possession of the land and rebuild the

fences, and would do so if not forcibly resisted; that they did not wish to get shot nor to shoot anybody, but would take possession and hold it if there was no danger of personal violence; and that Gough answered that Bliss and O'Connell would resist any attempt on their part to retake possession, by force, and by every means in their power. It was then agreed between Gough, McMinn, and his attorney, that they would meet Bliss and O'Connell at the office of Mr. Sharp the next day, to see what was to be done. Plaintiff's evidence further tended to show that the parties met at Mr. Sharp's office the next day, and McMinn's attorney stated to Bliss the previous conversation with Gough, and also told Bliss that if there was to be no forcible resistance they would retake possession and keep possession, and that they had come to meet him and learn what kind of opposition they might expect, as they wished to avoid personal violence; and that Bliss replied that he and O'Connell intended to keep and maintain their possession of the premises by force, and at all hazards. The evidence did not tend to prove that any further attempt was made by plaintiff to get possession.

The Act of December 23d, 1863, referred to in the opinion of the Court, is entitled "An Act providing for the transfer of cases, on the first day of January next, to the Courts established by the present Constitution." The second section of the Act contained the following clause: "And in all appeals in said actions of forcible entry and detainer, now pending in or hereafter appealed to said County Court, which shall on the first day of January next be pending and undetermined therein, the same shall be heard, tried, and determined in all respects as if no appeal had been taken, and the same had been transferred under and in conformity with the provisions of this Act." Under the old Constitution actions of forcible entry and detainer were required to be commenced in Justices' Courts, but the amended Constitution which went into effect January 1st, 1864, gave the County Courts original jurisdiction in these actions. The former part of section two, not quoted, provided for the transfer of actions of forcible

entry and detainer pending in Justices' Courts on the first day of January, 1864, to the County Courts.

Mahoney, Gough, and several others were made defendants along with Bliss and O'Connell, but plaintiff recovered judgment in the County Court against Bliss and O'Connell only, and they appealed.

The other facts are stated in the opinion of the Court.

*T. I. Bergin,* for Appellants, argued that the Forcible Entry and Detainer Act was penal as well as remedial, and that a mere unlawful entry was not sufficient to justify a conviction, but there must be a forcible entry with a strong hand, with unusual weapons, or with menace of life or limb; and cited *Janson* v. *Brooks,* 29 Cal. 214; and 4 Black. 148. He also argued that the repeal of the Forcible Entry and Detainer Act, which took effect January 1st, 1864, operated as a release and extinguishment of the cause of action, and left the Court no power to proceed and try the same; and cited *People* v. *Frisbie,* 26 Cal. 139; *Rex* v. *The Justices of the City of London,* 3 Burr, 1,456; *Norris* v. *Crocker,* 13 How. U. S., 429; and *Yeaton* v. *The United States,* 5 Cranch, 281.

*E. W. F. Sloan,* for Respondent, argued that that part of the Transfer Act of December 23d, 1863, which related to forcible entries and detainers might be regarded as incorporated with and forming a saving clause in the Act repealing the Forcible Entry and Detainer Act, as both related to the same thing; and cited *Talbot* v. *Leeman,* 1 Cranch, 35; *Church* v. *Crocker,* 3 Mass. 17. He also argued that in order to constitute forcible entry and detainer it was not necessary that violence against person or property should be resorted to, but that if the party dispossessed had reason to believe from anything said that he could not regain possession without forcible resistance, the action could be maintained; and cited *Childress* v. *Black,* 9 Yerger, 320; *Blumfield* v. *Reynolds,* 4 Bibb, 388; and *People* v. *Van Nostrand,* 9 Wend. 52.

By the Court, SHAFTER, J. :

This is an action of forcible entry and detainer. The case passed from the Justice's Court to the County Court on appeal taken by defendants on the 31st of December, 1863. At the January term of the County Court, 1864, the defendants moved to dismiss the action on the ground that the statutes under which it was brought had been repealed. The motion was denied. The case was tried at the September term, 1864, and comes here on the appeal of the defendants from the judgment and the order overruling their motion for a new trial.

The Act of April 27th, 1863, (Acts 1863, p. 655, Secs. 15, 16,) repealed all Acts previously passed relating to forcible entries and unlawful detainers, the repeal to take effect on the 1st day of January, 1864. The right of the plaintiff to the summary remedy of forcible entry and detainer, being of statute origin, would have terminated on the 1st day of January, 1864, had not the Legislature repealed the repealing clause, so far as pending cases were concerned, by the Transfer Act of December 23d, 1863. (Acts 1863-4, p. 1.) This Act and the Act of April 27th, 1863, both took effect at the same time—January 1st, 1864—and are clearly in *pari materia.* The provisions of the Transfer Act are, in our judgment, wholly irreconcilable with the idea that the Legislature conserved judicial cognizance over the cases referred to for no other purpose than that they might be formally dismissed on motion. The provision is that the cases " shall be tried and determined" in the County Courts the same as though they had been brought there in the first instance. So far, the case is with the plaintiff.

The first count of the complaint charges " a forcible entry with a multitude of people," and a " forcible and unlawful detainer." In a complaint so framed, the forcible entry is the gist of the action, the averment of forcible detainer not being stated as an independent ground of relief, but as a mere continuation or consequence of the first act. (*Preston* v. *Kehoe,* 15 Cal. 318 ; *Thompson* v. *Smith,* 28 Cal. 532.) There was

no evidence in the case tending to prove a forcible entry, that is, an entry with strong hand with unusual weapons, or with menace of life or limb. (*Polack* v. *McGrath*, 25 Cal. 58.) The second count charges an unlawful entry and forcible detainer, but there is no evidence in the record tending to prove a forcible detainer within the rule settled in the case last referred to. There was here no actual exhibition of force when the plaintiff's agent went to the land for the purpose of re-entering upon it, nor was there any evidence either of present ability or disposition to use it. The defendant Gough uttered no menace, but, in answer to a question, suggested what Bliss and O'Connell would do if a re-entry should be attempted. The interview seems to have been conducted in an amicable spirit, and ended in a formal adjournment to the next day, and to a place three fourths of a mile from the lot in controversy, for the purpose of seeing Bliss and O'Connell "as to what was to be done." It appears that the parties met in pursuance of this adjournment, and that Bliss being interrogated upon the point, "answered and said that he and O'Connell intended to keep and maintain possession of the premises by force, and at all hazards." It appears that Loyd, at whose office this parley took place, "then stepped forward and remarked that Bliss and O'Connell intended to maintain their possession until they were put out by law;" to which remark Bliss made no reply. This interview was by convention—it was not on the land, but remote from it—it was, apparently, diplomatic in conception, and the dialogue between the parties seems to have been diplomatically conducted. Each party manœuvred for a position. We consider the case of *Polack* v. *McGrath et al.* stronger on the facts than this.

Judgment reversed and new trial ordered.

Mr. Chief Justice Currey expressed no opinion.