H. MUSGROVE, Auditor, etc., v. VICKSBURG & NASHVILLE R. R. Co.

1. REPEAL OF STATUTES — EFFECT THEREOF.— The effect of the repealing statute is to obliterate the repealed statute as completely as if it never had been passed.  It must be considered as a law that never existed except for the purpose of those actions which were commenced, prosecuted and concluded while it was an existing law.  If there has been a change or repeal of the law applicable to the rights of the parties, after rendition of the original judgment and pending the appeal, the case must be heard and decided in the appellate court, according to the then existing law.

2. SAME — SAME.— If the judgment of the court of original jurisdiction was wrong on the law as it then stood, although there may have been error, if the law has been repealed, the appellate court will not reverse and remand, because the inferior court must recognize the repeal and conform on the second trial to the law as it then was.

3. SAME — POWER OF THE LEGISLATURE. — The legislature has plenary power to enact laws or repeal them, unless prohibited expressly or by implication by the state or federal constitution.  The power to repeal a law is as complete and full as the power to enact it.  The repeal of a statute terminates all proceedings under it, unless rights have accrued which cannot be divested.

4. VESTED RIGHTS — REMEDIES — POWER OF THE STATE OVER THEM. — The general rule is, that the right to a particular remedy is not a vested right.  The exception is of those special cases where the remedy is part of the right itself.  Aside from this exception the state has complete control over remedies, provided, that in changing the remedy, it does not impair the preexisting right.

5. SAME — ACT OF APRIL 6, 1874.— This statute which repealed the act óf 1872, allowing the auditor to assess a tax, under certain circumstances, to pay a subscription, etc., put an end to proceedings against the auditor to compel the levy of the tax, but did not destroy or impair any vested right or the obligation of any contract to which the company may have been substituted.

6. ACT OF MARCH 15, 1872 — POWER OF AUDITOR THEREUNDER. — This statute empowers the auditor to levy the tax when the authorities of the county neglect or refuse so to do, and such neglect or refusal is not on account of any sufficient cause or in consequence of pending and undecided litigation.  It does not contemplate a legal controversy with the auditor to determine the validity of the indebtedness of the county, as no provision is made for giving notice to the county, the real party in interest; nor is any mode devised for investigating disputed issues.  It

implies that litigation must be with the boards of supervisors, for it makes a pending litigation one of the good reasons why the board declined to act. If the liability of the county has been determined by a court of competent jurisdiction, or if the board of supervisors have no valid objection to the debt, but declines to tax merely to shield the county from its burden, then the auditor may have been required to make the assessment.

7. CASE IN JUDGMENT. — The act of 1872, empowering the auditor to make the levy, having been repealed by act of 1874, pending this appeal, terminates all proceedings against the auditor. And the company having failed to show that the neglect or refusal of the board to assess the tax was willful and without good cause, a sufficient case, in the absence of the repeal of the law, is not made out to justify the auditor in making the assessment.

ERROR to the Circuit Court of Hinds County.   Hon. GEO. F. BROWN, Judge.

The facts of the case sufficiently appear in the opinion of the court.

*George L. Potter*, for plaintiff in error.

*Harris & George*, for defendants in error.

Reporters find no brief on file on either side.

SIMRALL, J., delivered the opinion of the court :

By an act of the legislature of the 6th of February, 1860, the Grenada, Houston and Eastern Railroad Company were made a body corporate, with the usual franchises conferred upon such companies, to enable them to construct, equip and operate a railroad.   On the 10th of the same month, a supplemental act was passed, enabling the county of Calhoun (and three other counties), "upon such terms as they may think proper," to subscribe for capital stock not to exceed $200,000, provided such subscription shall be approved by a majority of the electors, voting at a special election, notice being given as provided in the "act" of the amount to be subscribed, and in what installments.

The second section directs the boards of police having made the subscription in accordance with the terms prescribed, "to as-

sess and collect the amount of subscription so made, on the taxable property of the county." " The sheriff and tax collector shall issue to each tax payer a separate receipt for the amount of said railroad tax." The third section makes these tax receipts, when presented in amounts of fifty dollars, convertible into certificates of stock, which are by the 4th section transferable by delivery. The 5th section requires the sheriff to keep a separate book, in reference to this special tax, designating the names of the tax payers and the several amounts collected, which book is made evidence for the purpose, doubtless, of aiding in the object proposed in the preceding sections. The remaining sections pertain to the duties of the sheriff. See acts of 1860, pp. 412, 413–14.

The scheme of this law is two fold. First, to aid in the construction of the railroad by a county subscription, to be paid by taxation; second, to constitute the tax payers stockholders in the company, to the extent of their several contributions.

The relators aver in their petition that a special election was held on the 25th of October, 1869, at which a majority of the votes were cast in favor of a subscription of 2,000 shares at $50 each, making in the aggregate $100,000, to be paid in eight annual installments, commencing with the year 1870. That on the 15th of November, 1869, the board of police declared that the subscription had been approved by a majority of the votes cast, and directed their president to make the subscription. That afterwards, on the 30th of January, 1871, the president of the board made the subscription.

The relators further state that by authority of an act of the legislature, passed the 20th of March, 1871, the board of supervisors issued bonds to the G., H. & E. R. R. Co., for $63,800, principal, bearing interest at eight per cent. until paid. Adding together the principal and interest of the several installments, to the date of the maturity of the last bond, the sum would be $87,500, which would leave, owing on the subscription, $8,000. The bonds begin to mature in 1873.

The petitioners further alleged that the fifteenth section of the charter of the G., H. & E. R. R. Co., authorized it to enter into an agreement of consolidation with any other railroad company, and that in 1872 it did consolidate with the Vicksburg, Yazoo Valley and Grenada R. R. Co., and that afterwards the name of the consolidated companies was changed to that of the Vicksburg and Nashville R. R. Co. By virtue of this consolidation, and under its new corporate name, this corporation claims that it has become invested with all the rights which belonged to the Grenada, Houston and Eastern R. R. Co.

The relators allege a default in the board of supervisors, to assess the tax; to liquidate the residue of the original subscription and the matured bonds and interest thereon; and that application was then made to the auditor of public accounts, under the date of March 15, 1872, to make the assessment, who also declined. Therefore the writ of mandamus was applied for, to enforce him to make the assessment. This act of March 15, 1872, was repealed by a statute passed April 6, 1874.

This recital of the legislation, and of the acts done under it, out of which this litigation arose, was necessary in order to bring out distinctly to the view the questions of law which we propose to consider.

It will be observed that the subscription to the Grenada, Houston and Eastern R. R. Co., and the bonds executed in lieu thereof occurred before the passage of the act of 1872, under which this proceeding was instituted.

Whatever rights the Vicksburg and Nashville R. R. Co. may have to the subscription to the Grenada, Houston and Eastern R. R. Co., and the bonds in substitution therefor, come by reason of the consolidation of that company with the Vicksburg, Yazoo Valley and Grenada R. R. Co., under the new name of the Vicksburg and Nashville R. R. Co.

The first and very important inquiry is, as to the effect of the repeal of the statute of 15th of March, 1872, upon this litigation.

The title of the act is explanatory of its object: " to secure the collection of stock subscribed by counties, cities and towns to railroads in this state." The second section is in substance, so far as these parties are concerned, a re-enactment of the second section of the act of the 10th of February, 1860. It makes it the duty of the board of supervisors, wherever subscriptions to railroads have been heretofore made, or may thereafter be made, to impose the tax. The act of 1860 imposed that duty upon the board of police of Calhoun county, for the benefit of the Grenada, H. & E. R. R. Co. The statute of 1872 is cumulative of the prior " act," as respects these litigants, with the addition of a right conferred by the 4th section upon " any person interested in the collection of the tax to apply to the auditor of public accounts to make the assessment whenever the board of supervisors have neglected or refused to do so, without any good or lawful cause, or in consequence of any pending and undecided litigation."

The repeal of this statute in nowise affected the remedies of the relators, except that it took away from the auditor, upon neglect or refusal of the board of supervisors, power to assess the tax. The repeal left to the relators every remedy known to the law, except the extraordinary power and duty imposed on the auditor.

The later authorities, discussing the effect of a repealing statute, generally refer to the terse and precise language of Tindal, C. J., in Key v. Goodwin, 4 Moore & Payne, 341 : " the effect of the repealing statute is to obliterate the repealed statute as completely from the records of parliament as if it never had been passed. * * It must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted and *concluded* while it was an existing law." Sustained, as this case is, by so great a weight of authority, we accept it as an accurate statement of the general rule. Some of the very numerous American cases are: Butler v. Palmer, 1 Hill (N. Y.), 324 ; Hardung v. People, 22 N. Y., 95 ; Duane v. United States, 5 Cranch, 281 ; C., L. & L. R. R. Co. v. Kenton County, 12 B. Monroe, 144.

The principle in its application (except as hereinafter mentioned) is very broad and sweeping. The authorities cited hold that if there has been a change or alteration, or repeal of the law applicable to the rights of the parties, after rendition of the original judgment, and pending the appeal, the case must be heard and decided in the appellate court, according to the then existing law. If, therefore, the judgment of the court of original jurisdiction was wrong, on the law as it then stood, although there may have been error, if the law has been repealed, the court will not reverse. Will not reverse and remand because the inferior court must recognize the repeal, and conform, on the second trial, to the law as it then was, and not to the law as it may have been at the time of the first trial. Schooner Rachael, 6 Cranch, 329.

An act of the territorial legislature of Ohio, of 1795, for the first time licensed administrators to sell the lands of their intestates. This statute was repealed the 1st of June, 1805. Proceedings were pending to obtain the order of sale, when the law was repealed; held that the order of sale made in August, 1805, after the repeal took effect, was *coram non judice*, and of no validity. Bank of Hamilton v. Dudley 2 Peters. Rep., 492.

As a general truth, each legislative body has the same measure of law making power as its predecessor. Each judges for itself as to the measures and policies that will conduce to the public good. Each may undo what its predecessor has done.

The state legislature has plenary law making power over all subjects, whether pertaining to persons or things, within its limits, either to introduce new law, or repeal the old, unless prohibited expressly or by implication by the federal constitution, or limited and restrained by its own. In determining, therefore, its capacity to pass a particular law, we do not look for a grant of the special power in the constitution. But consider whether there is a prohibition in the federal constitution, or a withholding altogether, or limitation of authority over the subject, in the state constitution. Subject to these prohibitions and limitations, the right and the

power to repeal a statute is as complete as the power to enact it in the first instance.

But limitations are imposed upon the effects of a repealing statute, by the constitution of the United States and of this state. "No state shall pass any law impairing the obligations of contracts." Clause of sec. 10, art. 1, Const. of U. S. "No * * * laws impairing the obligation of contracts shall ever be passed." Sec. 9, Bill of Rights. If, therefore, the repealing statute impairs a contract which was made by the terms of the repealed statute itself, or which has been consummated under and by reason of it, the repeal can not have the effect of destroying or impairing its obligation. Cognate to this, and equally beneficent in its consequences, if rights have accrued and become vested under a law, a subsequent repeal shall not operate to destroy or divest them. Whatever has matured into, and become vested as a right of property or a right to a chose in action, as a bond or other security or credit upon the faith of a law, a subsequent repeal does not annihilate the right, especially when held by third persons.

We accept the doctrine of the law to be, that the repeal of a statute necessarily terminates all proceedings under it, unless rights have accrued which can not be divested. 6 Wend., 531; 2 B. Monroe, 402; R. R. Co. v. Kenton County, 12 B. Monroe, 144; Aspinwall v. Daviess County, 22 How. S. C. Rep., 364.

Recurring to the history of the legislation and facts chronologically, out of which the relator's claim against the county arose, it will be noted that the subscription for the 2,000 shares of stock was made under and pursuant to the act of the legislature of February 10, 1860. The question of subscription, and the terms and amount of it were submitted to the vote in 1869, nine years after this enabling act was passed. The result of the election was declared by the board of police in November of that year, and the actual subscription for the stock was made by the president of the board, two years later, in January, 1871. In July of the same year, the bonds for the subscription were issued and delivered to the Grenada, Houston and Eastern Railroad Company.

Conceding the validity of these proceedings, it would follow that a right vested in the G., H. & E. R. R. Co. to the $100,000 of subscription to its stock, instantly upon its being made; and, further, when the bonds were delivered in place of the subscription, a right to the bonds vested also. It may also be admitted, that the second section of the act of 10th February, *1860*, empowering the board of police to pay the installments of the subscription by taxation, entered into and constituted a part of the railroad company's "right," or that it was an element in the contract between the county and the railroad company, and that it would be *ultra vires* for a subsequent legislature to repeal it. To state the proposition in other and perhaps simpler terms, the "vested right" which the company acquired was to have payment of the subscription, or the bonds, as the several installments matured, in the mode, and from the source pointed out in the second section, to wit, by taxation to be imposed by the board of police. Regarding the county and the company as parties to a contract with that condition in it, it is beyond the power of the legislature to destroy the right and impair the contract. In legal logic, when we speak of a "right," we inseparably connect it with a remedy for its invasion; when of a contract, we unite with it a remedy for its enforcement. The right which the G., H. & E. R. R. Co. had before its consolidation with the V., Y., B. & G. R. R. Co., was to demand of the board of police an assessment of the tax, and its collection by the proper officers. For the enforcement of that right, it could appeal to the proper court for relief by any appropriate remedy. The things which were *ultra vires* of the legislature would be to repeal the power of taxation granted by the second section of the act of 1860, or, by affirmative law, to cut off the company from all remedy in the courts against the board of police.

The rule is, that a right to a particular remedy is not a vested right. The exception is of those especial cases where the remedy is part of the right itself. Cooly Con. Lim., 361. Aside from

this exception, the state has complete control over remedies; provided, that in changing the remedy, it does not impair or destroy the preëxisting right.   Lessley v. Phipps, 49 Miss., 790.

The remedies (and they were ample), which were open and accessible to the Grenada, H. & E. R. R. Co. to procure payment of the county subscription and bonds at the time its rights vested, have never been impaired or touched by subsequent legislation. They still exist, and may be availed of by the relator to vindicate his rights.

As we have seen, the act of March 13, 1872, had no larger operation than the act of 1860, except that it confided to the auditor the duty in a certain contingency to make the assessment. The repeal of that statute left the relator in possession of all the remedies which existed at the time the right to the subscription and bonds vested, and deprived him of nothing except the power entrusted to the auditor.

The case stands thus in its legal aspect.   Is it competent for the legislature to repeal a statute introducing a new remedial agency affecting a particular class of liabilities, enacted subsequent to the incurring of those liabilities?   The repeal leaves the party holding the liabilities all the remedies allowed by law at the time the obligations were created.   There was no right contingent or otherwise within the contemplation of the parties to these obligations, that the legislature should provide an additional remedial agency ; or if one was created by statute, that it should not be repealed.

Whether the legislature would leave the parties to the law as it stood when the rights under the contract vested in the original company, or whether in addition to the remedies then in force it would provide another cumulative and additional, was a matter purely of legislative discretion and wisdom.   So after introducing it, it should stand or be repealed, was solely for the legislature to decide.

Cooly Con. Lim., p. 361, thus sums up the rule:   "If a statute

providing a remedy is repealed while proceedings are pending, such proceedings will be thereby determined unless provision be otherwise made."

We are of the opinion that the repeal of the statute of 1872 put an end to these proceedings against the auditor, and that the repeal did not impair or destroy any vested right or the obligation of any contract to which the relator may have been substituted.

2. But there is another view of the subject, equally fatal to the relator's pretensions. The auditor may impose the tax when the authorities of the county neglect or refuse so to do; "and such neglect or refusal is not on account of any good or lawful cause, or in consequence of pending and undecided litigation." Sec. 4, act March 15, 1872, p. 102. But if it shall appear that the refusal of the board of supervisors is not for a frivolous reason, but because of conviction, or of grave and serious doubts of the invalidity of the indebtedness entertained by the board, it refrains from action, does not make a case, intended by the statute, for the exercise of the power entrusted to the auditor.

It can hardly be supposed that the legislature meant that the auditor shall overrule the convictions, or solve the doubts and difficulties of the board of supervisors.

If that board has declined to make the assessment for the reasons suggested, a necessity has arisen, to bring the sufficiency of those reasons to a judicial test. It was hardly the legislative design that the auditor should sit in review upon them, and if he concurred, that then he should be subjected to a suit of *mandamus*.

The statute does not contemplate a legal controversy with that officer, to determine the validity of the indebtedness of the county. No provision is made for giving notice to the county, the real party in interest. No machinery is devised for investigating disputed issues. His power is invoked on the simple affidavit of neglect or refusal by the board, made by any person interested in the tax. The statute implies that litigation must be

with the board of supervisors, and not the auditor, for it makes a "pending litigation" one of the good reasons why the board has declined to act.

If the liability of the county has been settled by a court of competent jurisdiction, or if the board has no objection to the debt, but obstinately declines to tax, merely to shield the county from its burden, then the auditor may make the assessment.

The record discloses, that the auditor caused notice to be given to the authorities of Calhoun county, of the written petition addressed to him by the relator, to make the assessment; that the board of supervisors made a written response, setting up sundry objections to the validity of the debt, some of which present legal questions of grave doubt and difficulty, and assign these as the grounds of its refusal to impose the tax. The auditor was of opinion, that these objections, taken together, was a "good and lawful cause," justifying the board of supervisors in refraining from making the assessment. And, therefore, a case was not made out for his interposition.

He brought before the circuit court these matters in response to the relator's petition.

In our opinion the law did not design that the auditor should investigate and decide solemn and difficult legal questions touching the validity of the debt. That when he became satisfied that the board of supervisors had acted in good faith, for the causes stated by it, he could well decline, and thereby remit the relator to the proper legal tribunal for the vindication of his rights.

We place our judgment on the two grounds, viz. :

That the repeal of the statute of 1872 put an end to these proceedings.

Second. That independently of the repeal, and should we be in error as to its consequences, the record does not show the neglect and refusal of the board of supervisors to make the assessment, to have been upon such grounds and in such circumstances as would warrant the auditor to exert the power confided to him.

The judgment of the circuit court is reversed, and judgment here dismissing the suit.

Opinion is reserved on all other questions supposed to arise upon the record, and which have been argued by counsel.