McDOWELL v. FULLER.

1. EVIDENCE — STATE — BRIBERY—STATE PRISON—CONTRACTS—FORFEITURE—GOOD FAITH.

In an action against the warden of the Michigan Reformatory at Ionia for breach of a contract for convict labor, evidence that one of the members of the board of control acted corruptly and had agreed to accept a bribe so as to influence his vote in favor of reinstating the contract, which the board determined had been breached and had been forfeited, was not competent in support of the plaintiff's case, since it did not tend to impeach the good faith of the entire board. The admission of testimony having a tendency to establish such claim was erroneous and prejudicial, in conjunction with instructions of the court to the jury, permitting them to consider the alleged bribery upon the issue of good faith.

2. ESTOPPEL—STATES—PRINCIPAL AND AGENT—PUBLIC OFFICERS.

As a general rule the State is not estopped by acts or conduct of its. public officers amounting to a waiver or acquiescence, negligence .or fraud. Acts of an official such as are not within the scope of his authority are not official acts and the State is not bound thereby. The question of the bribery of one of several members of a State board was not a material issue in an action for the breach of a contract made with the State. Good faith on the part of the State in declaring such contract forfeited would not establish a breach of the contract on the part of the plaintiff, nor would proof of bad faith on the part of the State officials in attempting to forfeit the contract excuse a breach if such actually existed.

STEERE, J., dissenting.

Error to Jackson; Parkinson, J. Submitted January 29, 1914. (Docket No. 148.) Decided January 4, 1915.

Assumpsit by Joseph S. McDowell, assignee of Alfred Wallerstein, against Otis Fuller, warden of the Michigan Reformatory at Ionia, for breach of a contract for convict labor. Judgment for plaintiff. Defendant brings error. Reversed.

*Franz C. Kuhn* and *Grant Fellows*, Attorneys General, and *Thomas A. Lawler*, Assistant Attorney General, for appellant.

*Smith, Baldwin & Alexander, Leventritt, Cook & Nathan* and *Allen & Chard*, for appellee.

MOORE, J. This case is now here by writ of error. After it was brought here, the appellant made a motion to dismiss the writ, and also to dismiss the cause and all proceedings thereunder, and to decide the plaintiff was without authority to proceed further with this cause, or to attempt to collect the judgment of the lower court. We were of the opinion that it

would be inconsistent to say, in a motion to dismiss, that we were without jurdisdiction in the case, and at the same time exercise jurisdiction by passing upon the effect of the judgment rendered in the same case in the trial .court, and, as the motion could not be granted *in toto*, that it should be denied. Since that order was made, the case has been heard and submitted in this court, and many of the questions considered upon the motion to dismiss are here again, so that it would be very helpful to refer to the opinion found .in 169 Mich. 332 (135 N. W. 265). In that opinion it is held that the State is a party to the litigation. It is also held that it was competent for the State to withdraw, at any time, its consent to be sued, without impairing the obligation of contracts. The effect of such withdrawal, upon a judgment rendered in the circuit court before the withdrawal legislation took effect, when said judgment had been removed to this court by writ of error, was left undecided.

The question is now before us. Counsel for appellees say in substance that they had a cause of action, growing out of a contract which they brought into court, and upon which they obtained a judgment in the circuit court, conferring upon them a vested right, and that, while the repealing clause may affect the right of this court to proceed, it does not affect the judgment in the court below or their right to collect it. Much reliance is placed by the appellees upon the case of *McCullough* v. *Virginia,* 172 U. S. 102 (19 Sup. Ct. 134). We think that case distinguishable from the instant case. It is a case in the Federal courts. Virginia had passed, in 1871 (Laws 1870-71, p. 378), an act authorizing the issue of bonds and providing, among other things:

"The coupons shall be payable semi-annually and be receivable at and after maturity for all debts, taxes,

183 Mich.—41.

dues, and demands due the State, which shall be so expressed on their face."

These bonds were issued, and some of them became the property of the plaintiff. Later the State repealed that part of the act making the matured coupons receivable for taxes, and it was held that this impaired the obligation of contracts, within the meaning of the Constitution. It is true that the question was raised that the State of Virginia had withdrawn its consent to be sued by a repealing statute after judgment in the trial court, and therefore the whole proceeding abates. Justice Brewer said:

"But the judgment in this case did not go upon the effect of that repealing statute. It was not noticed in the opinion, and the decision was not that the suit abate by reason of the repeal of the statute authorizing it, but that the judgment of the trial court be reversed, and a new judgment be entered against the petitioner for costs. If the action had abated, it was error to render judgment against him for costs."

It is true that later in the opinion it was stated:

"It is not within the power of a legislature to take away rights which have been once vested by a judgment. Legislation may act on subsequent proceedings, may abate actions pending, but when those actions have passed into judgment the power of the legislature to disturb the rights created thereby ceases."

If this language is not dictum, and if it is regarded as saying that a judgment in a trial court pending a writ of error to an appellate court creates a vested right, then we think it must be said the opinion is against the great weight of authority, as will appear later.

Counsel also cite and rely upon *Town of Strafford* v. *Town of Sharon*, 61 Vt. 126 (17 Atl. 793, 18 Atl. 308). A reading of the opinion in that case will show it is not controlling.

In 26 Am. & Eng. Enc. Law (2d Ed.), pp. 747, 748, it is said that the general rule—

"may be stated to be that the repeal of a statute, in the absence of a saving clause, necessarily divests and destroys all inchoate interests which have arisen under it, while it leaves unimpaired those which either have become invested or, though connected with it, have an independent existence. * * * Though it is, as a general rule, the province of an appellate court to inquire only whether the judgment appealed from was in accordance with law at the time it was rendered, yet if, pending the appeal, the law which authorized the judgment is repealed, the judgment must be reversed."

It is also said:

"If a law conferring jurisdiction is repealed, expressly or by implication, without any reservation or saving clause, the right to exercise the jurisdiction is lost, and proceedings pending under it fall with the law." Pages 751, 752, *Id.*

"Even the recovery of a judgment for a statutory penalty or forfeiture does not give a vested right thereto, where an appeal has been taken, because the judgment, under such circumstances, is not immediately enforceable; and therefore the repeal of the statute pending the appeal will necessitate the reversal of the judgment and the dismissal of the action."

In 36 Cyc. p. 915, it is said:

"The consent of a State to be sued, being voluntary, may be withdrawn or modified by the State whenever it sees fit, even though pending suits may be thereby defeated; and, upon the repeal of the statute authorizing the suit, the court in which the suit is pending can proceed no further therein."

In *Vance* v. *Rankin*, 194 Ill. 625 (62 N. E. 807, 88 Am. St. Rep. 173), it is said:

" 'It is well settled that, if a statute giving a special remedy is repealed without a saving clause in favor of pending suits, all suits must stop where the repeal

finds them. If final relief has not been granted, before the repeal went into effect, it cannot be after.' *South Carolina* v. *Gaillard*, 101 U. S. 433. 'If a case is appealed, and, pending the appeal, the law is changed, the appellate court must dispose of the case under the law in force when their decision is rendered.' Cooley's Const. Lim. (2d Ed.) 381, and note. The effect of the repeal of a statute is to obliterate the statute repealed as completely as if it had never been passed, and it must be considered as a law that never existed, except for the purposes of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law. *Ex parte McCardle*, 7 Wall. 514; *Key* v. *Goodwin*, 4 Moore & P. 341; *Thorne* v. *San Francisco*, 4 Cal. 165; *Musgrove* v. *Railroad Co.*, 50 Miss. 677; *Town of Belvidere* v. *Railroad Co.*, 34 N. J. Law, 193. Pending judicial proceedings, based upon a statute, cannot proceed after its repeal. *Gilleland* v. *Schuyler*, 9 Kan. 569; *Wade* v. *St. Mary's School*, 43 Md. 178; *McMinn* v. *Bliss*, 31 Cal. 122; *State* v. *Daley*, 29 Conn. 272. This rule holds true until the proceedings have reached a final judgment in the court of last resort, for that court, when it comes to pronounce its decision, conforms it to the law then existing, and may therefore reverse a judgment which was correct when pronounced in the subordinate tribunal from whence the appeal was taken, if it appears that pending the appeal a statute which was necessary to support the judgment of the lower court has been withdrawn by an absolute repeal. *Hartung* v. *People*, 22 N. Y. 95; *Hubbard* v. *State*, 2 Tex. App. 506; *Atwell* v. *Grant*, 11 Md. 104; *United States* v. *Peggy*, 1 Cranch, 103; *Mayor of Annapolis* v. *Maryland*, 30 Md. 112. In *Musgrove* v. *Railroad Co.*, *supra*, a judgment erroneous when pronounced was affirmed because the subsequent repeal of a statute freed it from error. In *Keller* v. *State of Maryland*, 12 Md. 323 (71 Am. Dec. 596), the court having affirmed a judgment in ignorance of the repeal of a statute pending the appeal, afterwards at the same term, on its attention being called to the repeal, struck out the order of affirmance and in its place entered a judgment of reversal. In *Wikel* v. *Board of Com'rs of Jackson*

*County*, 120 N. C. 451 (27 S. E. 117), which was a petition for mandamus to compel the county commissioners to build a bridge and levy a tax for that purpose, as required by the act of 1895, which act, pending an appeal from a judgment granting a peremptory writ, was repealed, it was held that the repeal of such act destroyed the subject-matter of the action, and that the suit should abate.

"The repeal of a statute conferring jurisdiction takes away all right to proceed thereunder, unless it is expressly saved (*Illinois, etc., Canal* v. *City of Chicago*, 14 Ill. 334), and it carries with it all prosecutions pending thereunder (*Wilson* v. *Railway Co.*, 64 Ill. 542 [16 Am. Rep. 656]), and, except for the purposes of such suits as are begun, prosecuted, and concluded while it is an existing law, the statute repealed is as if it never existed (*Eaton* v. *Graham*, 11 Ill. 619; *Van Inwagen* v. *City of Chicago*, 61 Ill. 31; *Menard County* v. *Kincaid*, 71 Ill. 587; *Town of Jefferson* v. *People*, 87 Ill. 503; *Holcomb* v. *Boynton*, 151 Ill. 294 [37 N. E. 1031]). In *Van Inwagen* v. *City of Chicago*, 61 Ill. 34, it is said: 'The doctrine is that inchoate rights, derived under a statute, are lost by its repeal, unless saved by express words in the repealing statute, and unless those rights have become so far perfected as to stand independent of the statute; * * * that is to say, executed. * * * The effect of a repealing statute is to obliterate the prior law as completely from the records as if it had never passed, and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law.' In *Holcomb* v. *Boynton*, 151 Ill. 297 (37 N. E. 1032), the court say: 'Where a statute is repealed without such saving clause, it must be considered, except as to proceedings passed and closed, as if it had never existed.'"

See *Railroad Co.* v. *Tennessee*, 101 U. S. 337; *Railroad Co.* v. *Alabama*, 101 U. S. 832; *Baltzer* v. *North Carolina*, 161 U. S. 240 (16 Sup. Ct. 500), and *Beers* v. *Arkansas*, 61 U. S. (20 How.) 527.

In a note to *Todd* v. *Landry*, 12 Am. Dec. 479, appears the following:

"The effect of the repeal of a statute is 'to obliterate the statute repealed as completely from the records of parliament as if it had never passed, and it must be considered as a law that never existed, except for the purposes of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law.' *Ex parte McCardle*, 7 Wall. 514; *Key* v. *Goodwin*, 4 Moore & P. 341; *Thorne* v. *San Francisco*, 4 Cal. 165; *Van Inwagen* v. *Chicago*, 61 Ill. 31; *Musgrove* v. *Railroad Co.*, 50 Miss. 677; *Town of Belvidere* v. *Railroad Co.*, 34 N. J. Law, 193. Pending judicial proceedings, based upon a statute, cannot proceed after its repeal. *Gilleland* v. *Schuyler*, 9 Kan. 569; *Wade* v. *St. Mary's School*, 43 Md. 178; *McMinn* v. *Bliss*, 31 Cal. 122; *State* v. *Daley*, 29 Conn. 272. This rule holds true until the proceedings have reached a final judgment in the court of last resort, for this court, when it comes to pronounce its decision, conforms it to the law then existing, and may therefore reverse a judgment which was correct when pronounced in the subordinate tribunal whence the appeal was taken, if it appears that, pending the appeal, a statute which was necessary to support the judgment of the lower court has been withdrawn by an absolute repeal. *Hartung* v. *People*, 22 N. Y. 95; *Hubbard* v. *State*, 2 Tex. App. 506; *Montgomery* v. *State*, 2 Tex. App. 618; *Shepard* v. *State*, 1 Tex. App. 522 [28 Am. Rep. 422]; *Atwell* v. *Grant*, 11 Md. 104; *Price* v. *Nesbitt*, 30 Md. 263; *United States* v. *Peggy*, 1 Cranch, 103; *Mayor of Annapolis* v. *Maryland*, 30 Md. 112. In one instance a judgment erroneous when pronounced was affirmed, because the subsequent repeal of the statute freed it from error. *Musgrove* v. *Railroad Co.*, 50 Miss. 677. Another court having affirmed a judgment in ignorance of the repeal of a statute, pending the appeal, afterwards, at the same term, on its attention being called to the repeal, struck out the affirmance, and in its place entered a judgment of reversal. *Keller* v. *State*, 12 Md. 323 [71 Am. Dec. 596]." *People* v. *Bank*, 159 Cal. 65 (112 Pac. 866, 37 L. R. A. [N. S.] 934, Ann. Cas. 1912B, 1148).

It would seem to be clear that after an appeal is taken from the circuit court to the Supreme Court, until the appellate court has spoken, it cannot be known whether the judgment will be affirmed or reversed. In *Baumgarth* v. *Insurance Co.*, 159 Mich. 207 (123 N. W. 592), it is held that the issuance of a writ of error from the Supreme Court is a continuation of the original cause, and not a new proceeding. How can it then be said there is a vested right created by the judgment in the trial court? Instead of it being true that the litigation is ended, we think it must be said that the litigation is yet pending.

Under the facts disclosed by this record, applying the principles of law as stated in the authorities from which we have quoted, we are constrained to reverse the judgment. As this result has been brought about by legislation on the part of the State, enacted after the judgment in the court below was obtained, we decline to give either party costs.

Judgment is reversed, and no new trial is granted.

BROOKE, C. J. After a careful examination of the record in this case, I am satisfied that reversible error was committed upon the trial. We held (*McDowell* v. *Fuller*, 169 Mich. 332 [135 N. W. 265]), that this action is one against the State. Upon the trial the plaintiff was permitted to introduce testimony bearing upon the attempt upon the part of Wallerstein to bribe a member of the board of control, one Locke. Testimony was received over objection relative to the claimed conversations which took place in the city of Jackson with reference to the alleged bribery. With reference to this testimony, the attorney general interposed the following objection:

"We wish the record to show that we object to this testimony on the ground it was subsequent to cancella-

tion of the contract by the board; that it is irrelevant, immaterial, and incompetent; and there is no testimony upon which can be based a claim for damages against the State and has no tendency to show bad motives on the part of the board as a board and would not affect their action legally."

I regard it as an elementary principle that the State is not to be held estopped by the acts or conduct of its officers through waiver, acquiescence, negligence, or fraud. *Crane* v. *Reeder,* 25 Mich. 303; *Manthey* v. *Vincent,* 145 Mich. 327 (108 N. W. 667); *Olds* v. *Commissioner of State Land Office,* 150 Mich. 134 (112 N. W. 952); and *State* v. *Land Co.,* 160 Mich. 702 (125 N. W. 770). Where the acts of the official are not within the scope of his authority, they are not official acts, and the State is not bound thereby. The State is not liable for the torts of its officers, though committed in the discharge of official duties. 26 Am. & Eng. Enc. Law (2d Ed.), pp. 479, 480, and 481. See, also, *People* v. *Brown,* 67 Ill. 435, and *State* v. *Brewer,* 64 Ala. 287.

The basic question involved in the controversy was whether the State was justified in declaring the socalled Wallerstein contract forfeited. In his instructions to the jury, the learned trial judge used the following language:

"This testimony [with reference to the bribery of Locke] was admitted for you to consider in connection with the question as to whether or not there was good cause for canceling the Wallerstein contract. If you are able to say from the evidence, without reference to any claim of fraud or unlawful motive on Mr. Locke's part, that the receiver, Mr. Hatch, did not as a matter of fact, no matter for what cause or reason, employ the men assigned by the prison authorities to the Wallerstein contract, and that in considerable numbers the men so assigned and ready to be used were not used, and this was of frequent occurrence, or such disuse was prolonged, so that either the num-

ber so not used or employed was considerably in excess of the number suffered by the prison authorities to be in idleness from time to time before Hatch's receivership beginning May 2, 1903, or if, while the number not used and necessarily remaining idle, even if not much or any in excess of what had been before customarily permitted on occasion to remain temporarily idle, yet such idleness became more prolonged, or of much more frequent occurrence, so that there was a sensible increase of care and responsibility thrown upon the prison authorities on that account, that the work of enforcing or maintaining discipline was more difficult, if there was a perceptible increased interference with discipline, or the warden was to a greater extent than had been customary theretofore prevented from carrying into effect the sentences of the court imposing hard labor, then there was good cause for declaring the contract broken by Mr. Hatch, who was then charged with its performance as receiver of Wallerstein & Co., and the prison authorities had good cause for determining not to perform any longer on their part, no matter what corrupt or improper motive might have actuated Mr. Locke in voting to take advantage of the default of the other party, as I have substantially already said.

"But if you find it doubtful as to the actual facts in respect to whether Hatch, as receiver, was carrying out the Wallerstein contract substantially as completely as the Wallersteins had performed before Hatch was appointed and as they had been suffered to perform, and you think it doubtful whether the board of control had good cause for declaring the contract at an end or for refusing to longer carry it out, then you should consider the charge of fraud brought against Locke, and determine, first, whether it is proved by a preponderance of the evidence on that question, and, if so, whether it was the cause, the efficient procuring cause of the action of the prison board of control, and also the cause of the board insisting upon its action declining to change it. * * *

"And I go still further and instruct you that if the number of men not kept at work was considerably increased over what had been the usual experience

when the contractor was going forward under ordinary circumstances, or the men not at work, whether increased in number or not, were kept idle for more frequent time or greater length of time, and there appeared no prospect of immediate change in this condition, the prison authorities might declare this a breach on the part of Wallerstein & Co., or the receiver, and in so doing might, in relying upon that situation as a cause, take into consideration the circumstances in which Wallerstein & Co. were placed, their situation as being in the hands of a receiver in bankruptcy as indicating to the board of control of the prison the likelihood of this condition of default continuing, indications of immediate or early change for the better not being evident, the situation being prospectively prolonged, perhaps indefinitely, and acting in good faith in accordance with its own judgment, as the controlling board, and in reference to such a situation, if that was the situation, it would have the right and it might be its bounden duty to refuse longer to recognize the contract as binding or to suffer further default on the part of the contractor or the receiver."

It is apparent from the foregoing excerpt, and it becomes even more apparent from an examination of the entire charge, that the jury were permitted, and indeed instructed, to consider the alleged bribery or attempted bribery of Locke and permit it to have weight in determining whether the State was justified in declaring the Wallerstein contract forfeited, and acted in good faith in so doing. It is clear, I think, that the question of the bribery or attempted bribery of Locke was immaterial to the issue. The Wallersteins had either breached the contract in such a manner as to warrant the State in declaring it forfeited, or they had not breached it, in which event the action of the State in forfeiting it was invalid. Good faith on the part of the State in declaring it forfeited would not establish a breach of the contract on the part of the Wallersteins, nor would bad faith on the part of the

State in taking this action excuse such breach if, in fact, it existed. It seems very clear to me that the admission of the testimony in question, and the charge of the court in connection therewith, was erroneous and prejudicial to the defendant. If I am right upon this question, it becomes unnecessary to consider the other questions involved, and particularly the one treated in the opinion of Mr. Justice MOORE.

Upon the record as it stands in this court, I am of opinion that this court should content itself with an entry of an order reversing the judgment of the court below, for the reason pointed out herein.

McALVAY and STONE, JJ., concurred with BROOKE, C. J.

OSTRANDER, J. The State, through the warden of the Michigan reformatory at Ionia, who acted in pursuance of a statute making him capable in law of suing and being sued in all matters concerning the prison by his name of office, made a contract with plaintiff's assignor. For an alleged breach of the contract, suit was brought against the warden, was tried in the circuit court for Jackson county, with a jury, resulting in a judgment in plaintiff's favor of $22,000. The judgment was rendered April 23, 1910. The defendant sought to review the proceedings on error, but the bill of exceptions was not settled until May 25, 1911. By an act approved May 1, 1911, effective July 30, 1911 (Act No. 219, Pub. Acts 1911), the legislature amended the law (1 Comp. Laws, § 2091) in such manner that we held (169 Mich. 332, 334 [135 N. W. 265]), that the right of the warden to sue and be sued was withdrawn. From the manner in which the amendment was made, I must doubt whether a majority of the members of the legislature intended thereby to repudiate the plaintiff's claim or supposed the law,

as amended, would have the effect that is now claimed
for it. The writ of error being undecided, the attor-
ney general moved to dismiss the action and all pro-
ceedings in connection therewith and for an order
determining that plaintiff is without authority to pro-
ceed further to collect his judgment. This motion was
denied March 29, 1912. Thereafter the record was
printed and was filed June 8, 1912. The brief of the
attorney general was filed September 4, 1912; a brief
for the appellee having theretofore been filed. The
brief for the attorney general does not raise the point
that the court is without jurisdiction to examine the
errors assigned, or is bound to reverse the judgment
because of the amendment to the statute. In Janu-
ary, 1914, in a supplemental brief, and at the hearing,
the attorney general contended and contends that the
legislation which has been referred to effected a with-
drawal of the privilege of the plaintiff to sue the State,
violated no contract obligations, and that the action
has abated.

In my opinion, the judgment of the circuit court for
the county of Jackson, as a judgment, cannot be set
aside or avoided by the legislature. I have examined
many of the authorities cited in the opinions and
annotations which are made a part of the opinion of
Mr. Justice MOORE. I have found no case which sup-
ports the conclusion at which he has arrived. The
rights which the plaintiff sought to enforce were not
derived from the statute. His remedy against the
State was so derived. The remedy was not taken
away until after he had recovered his judgment, until
after, according to the law of the State, his demand
had been liquidated and his right to recover it had
become a vested right. He is not attempting to
further pursue the remedy. It is the State which is
urging that, because it has sued out a writ of error

to review the judgment, the cause ·is pending, and plaintiff is still dependent upon the statute remedy. The question immediately open to the State, in this court, on this appeal, is whether the judgment should have been obtained. If no error was committed, the judgment cannot be disturbed.

When the State enters into business, as an individual may do, it is bound, I think, by the same rules as are individuals with whom it makes contracts. The persons who are intrusted with the management of the State's private, proprietary, business affairs may do whatever the general agents of any business proprietor may do. If this is so, the State may be estopped by their conduct, may waive strict performance of contracts, and may not profit by their fraud or misconduct.

Whether reversible error was committed in the trial of this cause depends, I think, upon whether incompetent and irrelevant testimony was admitted in the attempt of the plaintiff to prove that the action of the board of control, which terminated the contract which is the foundation for this suit, was taken in bad faith and amounted to a fraud, and whether the court correctly instructed the jury upon that subject. I assume, of course, that the board had not the right to arbitrarily forfeit or terminate the contract, and that plaintiff had the right to prove, if he could, that the attempted forfeiture was arbitrary and fraudulent. It was conceded by counsel for the State, at the trial (record, p. 72), that plaintiff had the right to show improper motives, corrupt motives, on the part of the board in canceling the contract. The situation was a peculiar one. Whether plaintiff was performing the contract according to its terms depended somewhat upon the view which the warden and board of control took of the manner in which the men were em-

ployed, the number employed, and the time they were employed. The men were not free, but were prisoners. Discipline and good order in the institution, as well as the profits to be derived from the labor of the men, were matters to be considered. If a practice or practices, of the contractor, approved for a considerable time and apparently satisfactory to the officials, were later made the ground for declaring the contract relations at an end, especially if no amendment of the practices was first demanded, some foundation would be laid for the claim that the action forfeiting the contract was arbitrary. It is a theory advanced by plaintiff that one member of the board acted corruptly in forfeiting the contract, and testimony was introduced which tended to prove it. It was testimony of conversations with the member and his conduct after the action canceling the contract had been taken. It affected no other member of the board. The court advised the jury that they might use this testimony to resolve a doubt, if they had one—

"As to the actual facts in respect to whether Hatch, as receiver, was carrying out the Wallerstein contract substantially as completely as the Wallersteins had performed before Hatch was appointed and as they had been suffered to perform, and you think it doubtful whether the board of control had good cause for declaring the contract at an end, * * * then you should consider the charge of fraud brought against Locke and determine, first, whether it is proved by a preponderance of the evidence on that question, and, if so, whether it was the cause, the efficient, procuring cause of the action of the prison board of control, and also the cause of the board insisting upon its action declining to change it."

I have said that the testimony referred to has some tendency to prove that one member of the board acted corruptly. It had no tendency to prove that other

members acted corruptly, and should have been confined, in the instructions, to its legally probative sphere. And, unless the jury was satisfied that the contract was being substantially carried out by the contractor according, at least, to a method theretofore acceptable to the prison authorities, plaintiff had failed to make out a case and could not be aided by the conduct of Locke, whether it was fraudulent or otherwise. I am impressed that the testimony should not have been received for the purpose for which it was used, and that, with the instruction referred to reversible and extremely prejudicial error was committed.

Whether a new trial ought to be awarded depends, in my opinion, upon whether plaintiff has any other remedy; because I deny the right of the State to enter upon contract relations such as are involved in this suit, at the same time affording the other party a remedy for its breach of the contract, and then withdraw all remedy. There is a remedy for plaintiff other than through the courts, namely, through the board of State auditors. Constitution, art. 6, § 20. This being so, the judgment should be reversed, without prejudice to the right of plaintiff to present his claim to this board.

STEERE, J. I am unable to conclude that this court now has any authority to enter upon a review of this case, either for affirmance or reversal. The legislature has spoken and removed by repeal a former statute conferring power to pursue a remedy against the State in its courts, with the result that the repealed statute must be considered as never having existed, except as to actions theretofore prosecuted and concluded. All courts are stripped of jurisdiction to proceed further. Pending actions and all proceedings growing out of them must stop where the repeal finds them.

Legislation having thus withdrawn jurisdiction from the court, its only remaining duty and power in the premises is to dismiss the proceedings because its jurisdiction is gone, as in any other litigation where want of jurisdiction is made manifest.

KUHN and BIRD, JJ., did not sit.