## RAILROAD COMPANY *v.* TENNESSEE.

The Constitution of Tennessee, in force in 1838, declares that "suits may be brought against the State in such manner and in such courts as the legislature may by law direct." The statute of 1855 providing that actions might be instituted against the State under the same rules and regulations that govern those between private citizens, but conferring no power on the courts to execute their judgments, was repealed in 1865. No other law was enacted prescribing the manner or the courts in which the State could be sued. In a suit subsequently brought by the State in 1872 against the Bank of Tennessee and certain of its creditors, A., who was admitted a defendant, filed a cross-bill, setting up that while the first statute was in force the bank became indebted to him, and, praying that under the indemnity clause of its charter a decree be rendered against the State for the amount of the debt. The cross-bill was dismissed solely upon the ground that the State could not be sued in her own courts. *Held*, that the repealing statute of 1865 did not impair the obligation of a contract, within the meaning of the contract clause of the Constitution of the United States.

ERROR to the Supreme Court of the State of Tennessee.

The facts are stated in the opinion of the court.

Submitted on printed briefs by *Mr. Benjamin J. Lea*, Attorney-General of Tennessee, and *Mr. J. B. Heiskell*, for the State; and by *Mr. George Hoadly* and *Mr. E. L. Andrews*, *contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

On the 19th of January, 1838, the State of Tennessee established a bank in its own name and for its own benefit, and pledged its faith and credit to give indemnity for all losses arising from any deficiency in the funds specifically appropriated as capital. The State was the only stockholder, and entitled to all the profits of the business. The bank was by its charter capable of suing and being sued. At that time the Constitution of the State contained this provision: "Suits may be brought against the State in such manner and in such courts as the legislature may by law direct." Art. 1, sect. 17. No law had then been passed giving effect to this express grant of power, but in 1855 it was enacted that actions might be instituted against the State under the same rules and regulations that govern actions between private citizens, process being served on the district attorney of the district in which the suit was instituted. Code, sect. 2807. No power was given the courts to enforce their judgments, and the money could only be got through an appropriation by the legislature.

In 1865, this law was repealed, and after that there was no law prescribing the manner or the courts in which suits could be brought against the State. On the 16th of February, 1866, an act was passed to wind up and settle the affairs of the bank, under which an assignment of all the property was made to Samuel Watson, trustee. Afterwards, on the 16th of May, 1866, the State and the trustee filed a bill in equity, in the Chancery Court at Nashville, against the bank and its creditors, for an account of debts and assets and a decree of distribution. At the November Term, 1872, of the court, the Memphis and Charlestown Railroad Company was admitted as a defendant to this suit, and given leave to file a cross-bill. This cross-bill

was accordingly filed, and set forth an indebtedness from the bank to the railroad company, which accrued while the law allowing suits against the State was in existence, and sought to enforce the liability of the State under the indemnity clause of the charter. To this bill both the State and Watson, the trustee, demurred, and assigned for cause, among others, that the State could not be sued. The demurrer was sustained by the Chancery Court, and the cross-bill dismissed. An appeal was then taken to the Supreme Court of the State, where the decree below was affirmed, upon the express ground that the repeal of the law authorizing suits against the State was valid, and did not impair the obligation of the contract which the railroad company had. All other questions were waived by the court, and the decision placed entirely on the ground that as the State could not be sued in its own courts, the bill must be dismissed. To reverse that judgment this writ of error was brought.

The question we have to decide is not whether the State is liable for the debts of the bank to the railroad company, but whether it can be sued in its own courts to enforce that liability. The principle is elementary that a State cannot be sued in its own courts without its consent. This is a privilege of sovereignty. It is conceded that when this suit was begun the State had withdrawn its consent to be sued, and the only question now to be determined is whether that withdrawal impaired the obligation of the contract which the railroad company seeks to enforce. If it did, it was inoperative, so far as this suit is concerned, and the original consent remains in full force, for all the purposes of the particular contract or liability here involved.

The remedy, which is protected by the contract clause of the Constitution, is something more than the privilege of having a claim adjudicated. Mere judicial inquiry into the rights of parties is not enough. There must be the power to enforce the results of such an inquiry before there can be said to be a remedy which the Constitution deems part of a contract. Inquiry is one thing; remedy another. Adjudication is of no value as a remedy unless enforcement follows. It is of no practical importance that a right has been established if the

right is no more available afterwards than before. The Constitution preserves only such remedies as are required to *enforce* a contract.

Here the State has consented to be sued only for the purposes of adjudication. The power of the courts ended when the judgment was rendered. In effect, all that has been done is to give persons holding claims against the State the privilege of having them audited by the courts instead of some appropriate accounting officer. When a judgment has been rendered, the liability of the State has been judicially ascertained, but there the power of the court ends. The State is at liberty to determine for itself whether to pay the judgment or not. The obligations of the contract have been finally determined, but the claimant has still only the faith and credit of the State to rely on for their fulfilment. The courts are powerless. Every thing after the judgment depends on the will of the State. It is needless to say that there is no remedy to enforce a contract if performance is left to the will of him on whom the obligation to perform rests. A remedy is only wanted after entreaty is ended. Consequently, that is not a remedy in the legal sense of the term, which can only be carried into effect by entreaty.

It is clear, therefore, that the right to sue, which the State of Tennessee once gave its creditors, was not, in legal effect, a judicial remedy for the enforcement of its contracts, and that the obligations of its contracts were not impaired, within the meaning of the prohibitory clause of the Constitution of the United States, by taking away what was thus given. This renders it unnecessary to consider whether in this suit a cross-bill could have been maintained by the railroad company if the right to sue had been continued, and also whether a remedy given after the charter of the bank was granted, but in force when the debt of the bank was incurred, might be taken away without impairing the obligation of the contract of the State to indemnify the creditors against loss by reason of any deficiency in the capital. Neither do we find it necessary to determine what would be a complete judicial remedy against a State, nor whether, if such a remedy had been given, the obligation of a contract entered into by the State when it was in existence

would be impaired by taking it away. What we do decide is that no such remedy was given in this case.

*Judgment affirmed.*

MR. JUSTICE SWAYNE and MR. JUSTICE STRONG dissented.