## Richmond.

### MAURY v. COMMONWEALTH.

#### DECEMBER 5, 1895.

1. CONSTITUTIONAL LAW—*Right to Sue a State—Vested Rights—Case at Bar.*—The privilege of suing a State is not an absolute right, but is allowed as a matter of grace. It may be extended or withheld at the pleasure of the State; and once granted, it may be recalled at pleasure, unless during its existence rights have vested under or by virtue of it which the State has no constitutional right to defeat or impair by its subsequent recall. Further, if an act merely authorizes a judicial inquiry into the rights of parties, but does not confer the power to enforce the results of such inquiry, its repeal is not prohibited by the Constitution of this State or of the United States. Tested by these rules the right conferred by section 408 of the Code (amended by the act of February 22, 1890—Acts 1889-90, pp. 76-7) to test the genuineness of certain papers alleged to be coupons cut from bonds of the State, in the manner therein specified, did not confer upon the holder of such coupons such vested right that the State could not take away the right thereby conferred; and the act of February 21, 1894, (Acts 1893-94, p. 381,) repealing section 408 of the Code, and the act amendatory thereof, is valid and constitutional.

Error to a judgment of the Circuit Court of the city of Richmond, rendered April 4, 1895, on the petition of Richard L. Maury, praying that the court will inquire into and ascertain the genuineness of coupons cut from bonds of the State, and held by him, and will certify their genuineness.

*Judgment amended and affirmed.*

The opinion states the case.

*Maury & Maury*, for the plaintiff in error.

*Attorney-General R. Taylor Scott* and *H. R. Pollard*, for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Richard L. Maury, a citizen and tax-payer of the State of Virginia, tendered certain papers alleged to be coupons cut from the bonds of the State, issued under the acts of March 30, 1871, and March 28, 1889, and purporting to be receivable for taxes, debts, and demands due the State. The tender was made on the 17th day of October, 1892, in payment of a State property tax of $48, exclusive of the school tax.

These coupons, when tendered, were received by the treasurer of the city of Richmond, marked with the initials of the tax-payer and the date of the receipt thereof, and delivered, securely sealed up, to the judge of the Circuit Court, as required by sec. 408 of the Code of Virginia, as amended by the act approved February 22, 1890 (Acts of Assembly 1889–'90, pages 76–7). At the same time the plaintiff in error paid to the treasurer his entire tax of $48 in money.

As the law stood at the time of this tender, it was the duty of the Circuit Court to impanel a jury to determine whether or not the coupons tendered were genuine coupons, legally receivable for taxes, debts, and demands due the State. If that issue should be by the jury found in favor of the petitioner, it became the duty of the court to certify the fact to the treasurer, who thereupon received the coupons in satisfaction of the tax, and was required to refund the money theretofore paid by the petitioner to him, out of the first money in the treasury, in preference to all other claims.

On February 21, 1894, the General Assembly of Virginia

passed an act to repeal certain sections of the Code which relate to proceedings to try the genuineness of coupons tendered for taxes. Among the sections thus repealed was section 408, above referred to; and on the 4th day of April, 1895, the Commonwealth of Virginia, by her counsel, moved the Circuit Court to dismiss the petition of R. L. Maury, upon the ground that the section of the Code by authority of which it was filed had been repealed. The Circuit Court granted the motion, and the petition was accordingly dismissed, but without costs; to which ruling the petitioner excepted.

The contention is that, by virtue of the contract which the State of Virginia made in issuing the coupons, the petitioner acquired the right to pay his taxes therewith, and is protected in this right by the Constitution of the State and of the United States.

We do not propose to question this right. We do not consider its enjoyment as being at all involved in this litigation. The act of the Circuit Court complained of by the petitioner in no way defeats or impairs the tax-receivable quality of the coupon. If, being a tax-payer and the holder of coupons, the petitioner acquired the right to pay his taxes with said coupons, that right continues undiminished and unimpaired by the judgment complained of.

The right to sue a State does not exist *ex debito justitiæ.* The privilege of suing her is a grace which she extends or withholds as to her may seem just and proper, and which she may recall at pleasure, unless during its existence interests have vested under and by virtue of it, in which case that which was in its inception a mere gratuity becomes a right not to be defeated or impaired by the subsequent repeal of the law which gave it birth.

The real question, then, for us to consider is whether any right has vested under section 408 of the Code, as amended, which is of such a character as to bring it under the protec-

tion of the principle just announced, and so engrafts upon and, as it were, incorporates into the contract of the State with the petitioner, the remedy which it confers as to bring it under the operation of the clause in the Constitution which forbids a State to pass a law impairing the obligation of a contract.

Let us consider for a moment what right was conferred by section 408. It merely enabled the coupon-holder to tender his coupons to the collecting officer, whose duty it then became to deliver them, securely sealed up, to the judge of the Circuit Court. The tax-payer was then authorized to file his petition against the Commonwealth, and a summons to answer the petition was served on the attorney for the Commonwealth. An issue having been made, a jury was to be impanelled to try whether the coupons tendered were the genuine coupons of the State, legally receivable for taxes. If the jury found in the affirmative, the judgment of the court, which of course followed the verdict, was required to be certified to the treasurer, who was then to receive the coupons, and refund the money theretofore paid by the petitioner, out of the money in the treasury, in preference to all other demands. The court was not authorized to render a judgment for the payment of the money. Its function ended when the issue joined as to the genuineness of the coupons was determined. Its whole duty was to certify to the treasurer the fact that the coupons tendered were or were not genuine, as ascertained by the verdict, and, having done this, its jurisdiction was exhausted. It was clothed with no power to enforce its judgment under the section now being considered.

Of proceedings of this kind, Chief-Justice Waite says, in *Railroad Co.* v. *Tennessee*, 101 U. S. 339: "The remedy which is protected by the contract clause of the Constitution is something more than the privilege of having a claim ad-

judicated.   Mere judicial inquiry into the rights of parties is not enough.   There must be the power to enforce the results of such an inquiry before there can be said to be a remedy which the Constitution deems part of a contract.   Inquiry is one thing ; remedy another.   Adjudication is of no value as a remedy unless enforcement follows.   It is of no practical importance that a right has been established if the right is no more available afterwards than before.   The Constitution preserves only such remedies as are required to enforce a contract.

"Here the State has consented to be sued only for the purpose of adjudication.   The power of the courts ended when the judgment was rendered.   In effect, all that has been done is to give persons holding claims against the State the privilege of having them audited by the courts instead of some appropriate accounting officer.   When a judgment has been rendered, the liability of the State has been judicially ascertained, but there the power of the court ends.   The State is at liberty to determine for itself whether to pay the judgment or not.   The obligations of the contract have been finally determined, but the claimant has still only the faith and credit of the State to rely on for their fulfillment.   The courts are powerless.   Everything after the judgment depends on the will of the State."

See also *Memphis* v. *United States*, 97 U. S. 284, where it is said that "it is competent for the Legislature to repeal an act, which, when it was passed, was a mere gratuity, if while it was in existence no vested rights have been acquired under it, or in virtue of it."

And upon the general subject of the power of the State over acts permitting itself to be sued, see Black on Const. Prohibitions and *Beers* v. *State of Arkansas*, 20 How. 527.

While, therefore, we are of opinion that the act repealing section 408 of the Code is not in conflict with the Constitution

either of the State or of the United States, but is valid and binding, and therefore that the Circuit Court did not err in dismissing the petition, we are of opinion that it should have directed the coupons of the petitioner, which it held for identification, to be returned to him. But the State certainly ought not to retain both the coupons and the money. It is not disputed that the petitioner was indebted to the State for taxes due. As those taxes have been satisfied by the money which he paid, he will, upon the return of his coupons, be fully restored to the position which he occupied on the 17th of October, 1892, as far as it is in the power of this court to relieve him.

We are, therefore, of opinion that the judgment of the Circuit Court dismissing the petition should be amended so as to provide for the return to the plaintiff in error of the coupons described in his petition aforesaid, and that, as amended, the judgment of the Circuit Court should be affirmed, but without damages or costs.

*Judgment amended and affirmed.*