## BALTZER *v.* NORTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 93. Argued February 3, 4, 1896. — Decided March 2, 1896.

The decision of the Supreme Court of North Carolina, made in an action to recover on bonds issued by the State in 1868, that the constitution of 1868, (in force when the bonds were issued,) giving the Supreme Court of the State jurisdiction to hear claims against the State, but providing that its decision should be merely recommendatory, to be reported to the legislature for its action, had been repealed by an amendment to the constitution made in 1879 which forbade the general assembly to assume or provide for the payment of debts incurred by authority of the convention of 1868, or by the legislature that year or in two sessions thereafter unless ratified by the people at an election held for that purpose, and that the court was without jurisdiction to render judgment of recommendation on a claim against the State whose validity was thus denied by the state constitution, did not in any way impair the obligation of contracts entered into by the State when the constitution of 1868 was in force.

THE case is stated in the opinion.

*Mr. Simon Sterne* for plaintiff in error.

*Mr. James E. Shepherd* and *Mr. Charles M. Busbee,* (with whom was *Mr. F. I. Osborne* on the brief,) for defendant in error.

MR. JUSTICE WHITE delivered the opinion of the court.

By an ordinance of the Constitutional Convention of the State of North Carolina, held in 1868, certain bonds were authorized to be issued in aid of the Chatham Railroad. Whilst there was some question raised on the subject, in the discussion at bar, it may be, for the purposes of this case, conceded that at the time the ordinance authorizing the bonds was passed, section 11, article 4 of the constitution of North Carolina, adopted in 1868, was in existence, and was as follows:

"*Claims against the State.* — The Supreme Court shall have original jurisdiction to hear claims against the State, but its decision shall be merely recommendatory. No process in the nature of execution shall issue thereon; they shall be reported to the next session of the general assembly for its action."

In 1879 an amendment to the constitution of North Carolina was submitted by the legislature of that State to the people thereof, and this amendment was ratified by a popular vote in 1880. It is as follows:

"Nor shall the general assembly assume or pay or authorize the collection of any tax to pay, either directly or indirectly, expressed or implied, any debt or bond incurred or issued by authority of the convention of the year 1868, nor any debt or bond incurred or issued by the legislature of the year 1868, either at the special session of the year 1868 or at its regular sessions of the years 1868–'69 and 1869–'70, except the bonds issued to fund the interest on the old debts of the State, unless the proposing to pay the same shall have first been submitted to the people and by them ratified by the vote of a majority of all the qualified voters of the State at a regular election held for that purpose."

After the incorporation of this amendment in the constitution of the State, the plaintiff in error commenced in the Supreme Court of North Carolina an action against that State for the recovery of the amount of interest due on coupons forming part of certain bonds which had been issued under the ordinance of the Constitutional Convention of 1868,

above referred to. The attorney general of the State, reserving all its rights to plead to the jurisdiction, answered denying both the existence and validity of the bonds and coupons declared on, and pleading the statute of limitations of three and ten years. Thereupon a motion was made by the attorney general on behalf of the State to dismiss the action for want of jurisdiction. This motion prevailed, the court referring, as its grounds for dismissing the suit, to the reasons assigned by it in the previous cases of *Horne* v. *The State,* 84 N. C. 462, and *Baltzer* v. *The State,* 104 N. C. 165. The cases thus referred to held that the power of the court to recommend claims to the favorable consideration of the legislature had — *quoad* claims identical in legal nature with the coupons sued on — been repealed by the constitutional amendment to which we have referred, and that the court was without jurisdiction to render judgment of recommendation on a claim against the State when its validity was denied by the state constitution. To the judgment thus rendered this writ of error is prosecuted.

In *Railroad Co.* v. *Tennessee,* 101 U. S. 337, 339, this court was called upon to determine whether the repeal, by a State, of a statutory provision authorizing itself to be sued in its own courts, but which gave no power to the courts to enforce their judgments, and which enacted that when such judgments were rendered the money could only be obtained through an appropriation by the legislature, was an impairment of the obligation of a contract, entered into by the State whilst the authority conferred by the statute was unrepealed. In speaking on this subject this court, by Mr. Chief Justice Waite, said :

"The question we have to decide is, not whether the State is liable for the debts of the bank to the railroad company, but whether it can be sued in its own courts to enforce that liability. The principle is elementary that a State cannot be sued in its own courts without its consent. This is a privilege of sovereignty. It is conceded that when this suit was begun the State had withdrawn its consent to be sued, and the only question now to be determined is whether that withdrawal

impaired the obligation of the contract which the railroad company seeks to enforce. If it did, it was inoperative, so far as this suit is concerned, and the original consent remains in full force, for all the purposes of the particular contract or liability here involved.

" The remedy, which is protected by the contract clause of the Constitution, is something more than the privilege of having a claim adjudicated. Mere judicial inquiry into the rights of parties is not enough. There must be the power to enforce the results of such an inquiry before there can be said to be a remedy which the Constitution deems part of a contract. Inquiry is one thing; remedy another. Adjudication is of no value as a remedy unless enforcement follows. It is of no practical importance that a right has been established if the right is no more available afterwards than before. The Constitution preserves only such remedies as are required to enforce a contract.

" Here the State has consented to be sued only for the purposes of adjudication. The power of the courts ended when the judgment was rendered. In effect, all that has been done is to give persons holding claims against the State the privilege of having them audited by the courts instead of some appropriate accounting officer. When a judgment has been rendered, the liability of the State has been judicially ascertained, but there the power of the court ends. The State is at liberty to determine for itself whether to pay the judgment or not. The obligations of the contract have been finally determined, but the claimant has still only the faith and credit of the State to rely on for their fulfilment. The courts are powerless. Everything after the judgment depends on the will of the State. It is needless to say that there is no remedy to enforce a contract if performance is left to the will of him on whom the obligation to perform rests. A remedy is only wanted after entreaty is ended. Consequently, that is not a remedy in the legal sense of the term, which can only be carried into effect by entreaty.

" It is clear, therefore, that the right to sue, which the State of Tennessee once gave its creditors, was not, in legal effect,

a judicial remedy for the enforcement of its contracts, and that the obligations of its contracts were not impaired, within the meaning of the prohibitory clause of the Constitution of the United States, by taking away what was thus given."

Subsequently, in the case of *Railroad Co.* v. *Alabama,* 101 U. S. 832, 834, the same question was presented on a state of facts, somewhat stronger in favor of the contention that there was a contract right, than that which had been considered in the foregoing case. There the facts were that the statute of the State, existing at the time the contract was made, not only authorized a judgment to be rendered against the State, but provided (we quote from the opinion) "that if a judgment should be rendered against the State, it was the duty of the comptroller, on the certificate of the clerk of the court, together with that of the judge who tried the cause, that the recovery was just, to issue his warrant for the amount, but no certificate could issue until six months after the recovery of the judgment. Code 1867, sec. 2536. It was also the duty of the treasurer to pay all warrants drawn on him by the comptroller under the authority of law; Code, sec. 442; but the constitution in force then and now provides in express terms that no money should be drawn from the treasury but in consequence of appropriations made by law. Const. 1834 and 1870, art. 2, sec. 24." Upon these facts, speaking through Mr. Chief Justice Waite, this court again said:

"We are unable to see any substantial difference between this case and that of *Railroad Company* v. *Tennessee, supra.* Under both the Tennessee and Alabama statutes the courts are made little else than auditing boards. If the funds are not voluntarily provided to meet the judgment, the courts are not invested with power to supply them. In Alabama, a warrant for the payment may be secured, but the State may stop payment by withholding an appropriation. Perhaps the judgment creditor may take one step further towards the collection in Alabama than he can in Tennessee; but both States may refuse to pay, that is, may refuse to make the necessary appropriation, and the courts are powerless to com-

pel them to do so. In neither State has there been granted such a remedy for the enforcement of the contracts of the sovereignty as may not, under the Constitution of the United States, be taken away."

The statute of North Carolina which we now consider, and which gave the courts of that State power to examine and recommend claims against it to the legislature, is much more restrictive than were the statutes of Tennessee and Alabama passed on in the cases just cited. Applying to this case the reasoning of this court in those cases expressed, it becomes clear that the authority given by the State of North Carolina to its court not being a part of the contract on which the plaintiff in error had a right to rely, its repeal did not impair the obligations of his contract in the sense conveyed by those words when used in the Constitution of the United States. This proposition so necessarily results from the authorities and is so self-evident in reason that it was not denied in the discussion at bar. Indeed, it was frankly conceded that the exercise by a State of the power to repeal a grant of authority to its courts to audit claims against itself, would not in any manner violate the obligations of contracts which had been entered into by the State at a time when the power existed. Yet, whilst this concession was made, it was asserted that the impairment of the obligation of the contract, here claimed to have been accomplished, arises from the fact that the state court erroneously held that the amendment to the state constitution repealed the court's authority to examine and recommend the claim presented to it, when in fact such repeal had not taken place. In other words, it was argued that although the right to have the claim examined and recommended was existing and unrepealed, the state court had impaired the obligations of the contract by holding that such right was nonexisting because repealed by a subsequent provision of the state constitution. But this is mere reasoning in a vicious circle, for the concession that the right could be taken away without violating the contract clause of the Constitution, necessarily implied that the decision of the state court as to repeal *vel non* in no way involved rights protected from impairment

under the Constitution of the United States. It is apparent that no rights under the Constitution of the United States arose in favor of the claimant from the provision conferring on the courts of the State the authority to examine and recommend, since all the benefits resulting therefrom could admittedly be withdrawn without violating the contract. To give effect to the contention of the plaintiff in error, we should be obliged to announce the contradictory proposition that where there were no rights under the Constitution of the United States to be impaired, yet a decision of the state court had impaired such rights. We should also be obliged to hold that although the State could at its will take away the right without impairing the contract, yet a decision by the court of last resort, of the State, that the right had been taken away was an impairment of the contract. The fallacy contained in the argument results from overlooking the fact that the moment it is admitted that the repeal of the right to have the claim examined and recommended is no impairment of the obligation of the contract secured under the Constitution of the United States, the question whether or not such right has been repealed becomes purely a question of state law to be determined by the state courts.

*Judgment affirmed.*