**CUDAHY PACKING CO. v. HARRISON,**
Collector (two cases).

Nos. 45424, 14939.

District Court, N. D. Illinois, E. D.
Feb. 9, 1937.

Defrees, Buckingham, Jones & Hoffman, of Chicago, Ill., for plaintiff.

Michael L. Igoe, U. S. Atty., and Carl R. Perkins, Sp. Asst. U. S. Atty., both of Chicago, Ill., and M. H. Eustace, Asst. Atty. Gen., for defendant.

WILKERSON, District Judge.

These suits seek a judgment against the collector for the amount of processing taxes paid by plaintiff prior to the enactment of the amendments of August 24, 1935, to the Agricultural Adjustment Act (48 Stat. 31, see 7 U.S.C.A. § 601 et seq.), and the decision of the Supreme Court (United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914) invalidating that statute.

Prior to the amendments of August 24, 1935, plaintiff paid processing taxes for the months from November, 1933, to March, 1935, aggregating $11,908,983.83. On November 23, 1935, plaintiff filed its bill in the equity suit to enjoin further collections of the processing taxes. An injunction was granted on condition that the amounts of the taxes, as they became payable, should be deposited in a special fund in a bank to abide the further order of the court. Plaintiff deposited the taxes assessed for March, 1935, and subsequent months.

On November 30, 1935, plaintiff filed a claim pursuant to sections 3220 and 3228 (a), R.S., as amended (26 U.S.C.A. §§ 1670, 1433), with the Commissioner of Internal Revenue for refund of the taxes assessed for the period prior to March, 1935, on the ground that the Agricultural Adjustment Act was invalid. On December 31, 1935, the Commissioner notified plaintiff that its claim was rejected for the reason that the Commission regarded the Agricultural Adjustment Act as constitutional.

On January 22, 1936, following the decision of the Supreme Court in Rickert Rice Mills, Inc., v. Fontenot, 297 U.S. 110, 56 S.Ct. 374, 80 L.Ed. 513, the court, in the equity suit, ordered a return of the amounts deposited by plaintiff under the order of November 23, 1935, and continued the injunction in force. On June 17, 1936, plaintiff filed a supplemental bill in the equity suit in which the proceedings before the Commissioner as to taxes assessed prior to March, 1935, were set forth, and asked that the temporary injunction be made permanent, and that a decree be entered against the collector for the taxes assessed prior to March, 1935.

On June 19, 1936, plaintiff filed its action at law for the recovery of the taxes involved in the supplemental bill in the equity suit. Defendant interposes sections 644, 645, 646, 647, 648, 649, and 652 of title 7, U.S.C.A. (sections 902, 903, 904, 905, 906, 907, and 910 of the Revenue Act of 1936, approved June 22, 1936), as a bar to the further maintenance of these suits. Plaintiff replies that title 7 of the 1936 Act does not apply to cases pending at the time of its enactment; and that if it is considered to apply to plaintiff's suits, it is unconstitutional and void and is an attempt to strike down an existing right.

The views of the District Judges who have passed upon the above sections of the Revenue Act of 1936 in their relation to claims for taxes paid prior to the invalidation of the Agricultural Adjustment Act

have not been harmonious. The Circuit Court of Appeals for the Fifth Circuit, on January 8, 1937, in Anniston Mfg. Co. v. Davis, Collector, 87 F.(2d) 773, sustained a judgment of the lower court dismissing a taxpayer's suit, and held that the effect of the revenue legislation of 1936, above mentioned, was to withdraw the consent of the government to the maintenance of the suit, and that there was no jurisdiction in the court below to entertain the action.

■ A consideration of the language of the sections of title 7, U.S.C.A., above referred to, in the light of the history of the legislation, leads to the conclusion that those sections were intended by Congress to apply to pending suits, and that if the sections are valid when applied to the suits now before the court, they require that this court shall not proceed further with the suits.

The sections of title 7 in question prohibit the making of refunds, in pursuance of court decisions or otherwise, unless there is compliance with the conditions there stated. One of those conditions is that the taxpayer must establish by the method there provided that he has borne the burden of such amount, or that he has repaid unconditionally such amount to his vendee who bore the burden thereof.

Section 989 of the Revised Statutes (28 U.S.C.A. § 842) provides: "When a recovery is had in any suit or proceeding against a collector or other officer of the revenue for any act done by him, or for the recovery of any money exacted by or paid to him and by him paid into the Treasury, in the performance of his official duty, and the court certifies that there was probable cause for the act done by the collector or other officer, or that he acted under the directions of the Secretary of the Treasury, or other proper officer of the Government, no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the Treasury."

Upon the facts stated in plaintiff's pleadings, this court, if it were to enter a judgment for plaintiff, would be obliged to withhold execution against the collector and to make the certificate of probable cause under section 989, R.S. (28 U.S.C.A. § 842). Moore Ice Cream Co. v. Rose, 289 U.S. 373, 381, 53 S.Ct. 620, 623, 77 L.Ed. 1265. The effect of the certificate would be "to convert the suit against the collector into a suit against the government." Moore Ice Cream Co. v. Rose, supra; United States ex rel. McLeod v. Sherman, 98 U.S. 565, 25 L.Ed. 235. Here, however, the provisions of the Revenue Act of 1936 intervene, and destroy entirely the effectiveness of the certificate under section 989. Refunds of taxes collected under the Agricultural Adjustment Act may not now be made in accordance with the certificate of the court. They must be made in accordance with title 7 of the Revenue Act of 1936. The court, therefore, is deprived of power to perform any effective judicial act in the case. It would require clear and unmistakable language to warrant imputing to Congress the intention that, as to pending suits, a judgment may be entered against the collector when that judgment, by the express provisions of the Act of 1936, has been deprived of all of its force as an instrumentality through which the refund may be obtained from the treasury. Section 910 of title 7 (7 U.S.C.A. § 652), when read in its relation to existing law and to the other provisions of title 7, is to be construed, in my opinion, as applying to suits pending against the Collector when the statute was enacted as well as to suits commenced thereafter.

■ Is the statute so construed a valid exercise of the Power of Congress? If the suits against the collector are as stated in Moore Ice Cream Co. v. Rose, supra, "a remedial expedient for bringing the government into court," the suits must be regarded, so far as the rule barring the institution and maintenance of suits against the United States without its consent is concerned, as essentially suits against the United States, and the right of the United States to withdraw its consent cannot be questioned. In Lynch v. United States, 292 U.S. 571, 581, 54 S.Ct. 840, 844, 78 L.Ed. 1434, it is said:

"Consent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although, given after much deliberation and for a pecuniary consideration. DeGroot v. United States, 5 Wall. 419, 432, 18 L.Ed. 700. Compare Darrington v. Bank of Alabama, 13 How. 12, 17, 14 L.Ed. 30; Beers v. Arkansas, 20 How. 527–529, 15 L.Ed. 991; Gordon v. United States, 7 Wall. 188, 195, 19 L.Ed. 35; Memphis & C. Railroad Co. v. Tennessee, 101 U.S. 337, 25 L.Ed. 960; South & N. A. Railroad Co. v. Alabama, 101 U.S. 832, 25 L.Ed. 973; In re

Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 31 L. Ed. 216; Hans v. Louisiana, 134 U.S. 1, 17, 10 S.Ct. 504, 33 L.Ed. 842; Baltzer v. North Carolina, 161 U.S. 240, 16 S.Ct. 500, 40 L. Ed. 684; Baltzer & Taaks v. North Carolina, 161 U.S. 246, 16 S.Ct. 502, 40 L.Ed. 687. The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, DeGroot v. United States, 5 Wall. 419, 431, 18 L.Ed. 700; United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011, and to those arising from some violation of rights conferred upon the citizen by the Constitution, Schillinger v. United States, 155 U.S. 163, 166, 168, 15 S.Ct. 85, 39 L.Ed. 108. * * * For immunity from suit is an attribute of sovereignty which may not be bartered away. * * *

"When the United States creates rights in individuals against itself, it is under no obligation to provide a remedy through the courts. United States v. Babcock, 250 U.S. 328, 331, 39 S.Ct. 464, 63 L.Ed. 1011. It may limit the individual to administrative remedies. Tutun v. United States, 270 U. S. 568, 576, 46 S.Ct. 425, 70 L.Ed. 738. And withdrawal of all remedy, administrative as well as legal, would not necessarily imply repudiation. So long as the contractual obligation is recognized, Congress may direct its fulfillment without the interposition of either a court or an administrative tribunal."

Are these suits to be treated as essentially suits against the United States when the question of withdrawal of consent is involved? It would not seem necessary for this court to go beyond Moore Ice Cream Co. v. Rose, supra, to answer this question. There the Supreme Court, reviewing in detail the legislation and decisions touching suits against the collector, said:

"A suit against a collector who has collected a tax in the fulfillment of a ministerial duty is to-day an anomalous relic of bygone modes of thought. He is not suable as a trespasser, nor is he to pay out of his own purse. He is made a defendant because the statute has said for many years that such a remedy shall exist, though he has been guilty of no wrong, and though another is to pay. Philadelphia v. Collector, supra, 5 Wall. 720, at page 731, 18 L.Ed. 614. There may have been utility in such procedural devices in days when the government was not suable as freely as now.

United States v. Emery, Bird, Thayer Realty Co., supra [237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825]; Ex parte Bakelite Corporation, 279 U.S. 438, 452, 49 S.Ct. 411, 73 L.Ed. 789; Act of February 24, 1855, c. 122, 10 Stat. 612, §§ 1 and 9; Judicial Code, § 145, 28 U. S.C. § 250 (28 U.S.C.A. § 250); Judicial Code § 24 (20), 28 U.S.C. § 41 (20); 28 U.S.C.A. § 41 (20). They have little utility to-day, at all events where the complaint against the officer shows upon its face that in the process of collecting he was acting in the line of duty, and that in the line of duty he has turned the money over. In such circumstances his presence as a defendant is merely a remedial expedient for bringing the government into court. * * *

"One who is brought before the court as a formal party only will not be heard to object that there has been a denial of due process in enlarging the liability to be borne by some one else. Enough that the legislation is valid as to him, whether it be valid or invalid in its bearing upon others.

"The decision of this case does not require us to determine whether the act of 1924 would affect the respondent's liability if the certificate of the court converting the suit into one against the government were dependent upon controverted facts, or upon facts permitting different inferences or calling upon the judge to exercise discretion. No such situation is presented by the record now before us. Indeed, no such situation, it would seem, can ever be presented where a collector has done no more than accept payment of a tax assessed by a superior who has been invested by the statute with power to command. Our duty does not require us to deal with problems merely hypothetical. If a case should develop where a certificate might issue as a matter of discretion, other questions would be here."

Plaintiff, however, cites a line of cases, including Sage v. United States, 250 U.S. 33, 39 S.Ct. 415, 63 L.Ed. 828, and Smietanka v. Indiana Steel Co., 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99, and argues from them that the plaintiff, before the passage of the Act of 1936, acquired a vested right in its suits against the collector, and that this could not be taken away without providing a substantial equivalent for it.

Those cases, in my opinion, do not sustain the conclusion which plaintiff seeks to draw from them. In the Sage Case, which

is cited in the Smietanka Case as the basis for the ruling there, the United States relied upon a judgment against the collector for a part of a claim to bar a subsequent suit in the Court of Claims for the remainder, based upon a decision of the Supreme Court made after the judgment against the collector. The court said (250 U.S. 33, at page 37, 39 S.Ct. 415, 416, 63 L.Ed. 828), as to section 989, R.S. (28 U.S.C.A. § 842): "At the time the judgment is entered the United States is a stranger. Subsequently the discretionary action of officials may, or it may not, give the United States a practical interest in the amount of the judgment, as determining the amount of a claim against it, but the claim would arise from the subsequent official act, not from the judgment itself."

The Supreme Court did not deal with the distinction between cases in which the action of the court in staying execution and making the certificate of probable cause is discretionary, and those like Moore Ice Cream Co. v. Rose, supra, and the cases at bar in which, upon the conceded facts, the taxpayer is entitled to the stay and certificate as a matter of legal right. If it is said that the statement in the Rose Case is dictum, what is to be said about the Sage Case? The court said (250 U.S. 33, at page 38, 39 S.Ct. 415, 416, 63 L.Ed. 828): "But perhaps it would be enough to say that if the judgment otherwise were a bar the bar would be removed by the subsequent enactment of the Act of July 27, 1912, c. 256, 37 Stat. 240, upon which, as well as the Act of 1902, this claim is based." If a choice between dicta is to be made, the one is at least as good as the other. And it is the latest expression of the court on that subject.

Of what substantial right is plaintiff deprived when its suit against the collector is barred? Under the law prior to the Act of 1936, the collector, upon the entry of judgment against him, is entitled to a perpetual stay of execution, and to the certificate of probable cause. The tax was duly assessed, and in that situation the collector was under a ministerial duty to accept it when it was tendered to him. There was nothing left to his discretion. There was no margin for judgment and individual initiative. His duty being imperative, he is entitled as of right to the certificate converting the suit against him into one against the United States. Congress, as it had the right to do, by the Act of 1936 withdrew its consent to the conversion of the suit; and,

if we were to ignore section 910 of title 7 of the amendatory Act of 1936 (7 U.S.C.A. § 652), plaintiff is left with the bare right under section 989, R.S. (28 U.S.C.A. § 842), to a judgment against the collector, which the collector can never be required to pay and which is without efficacy to establish a claim against the United States. To say that this is something for the protection of which the Fifth Amendment may be invoked, is to confuse legal fiction with reality and to exalt the mere form of a legal proceeding above its true character.

■ It is urged, however, that as the statute levying the tax is void, plaintiff's right to proceed against the collector could not be taken away by the certificate under section 989, R.S., and that therefore section 910 of title 7 of the Act of 1936, when applied to plaintiff, is a deprivation of a substantial right. Plaintiff invokes the generality, "An unconstitutional law is no law." It is sufficient to say that the general language invoked cannot be applied to work a hardship upon a public officer who, in the performance of his duty, has acted in good faith, in reliance upon the validity of a statute and before any court has found that the statute is invalid.

We are not dealing here with a statute whose invalidity was so clear that an officer could not possibly rely upon it in good faith. We are dealing with a statute, as to the validity of which there was a divergence of opinion among the members of the court of last resort. The general maxim relied upon by plaintiff proves too much for its case. If there was no law, there was no tax; and the money received by the collector was not paid or accepted as a tax. The statutes about protest do not apply. The money was turned over by plaintiff voluntarily without protest, and with knowledge that it would be paid into the Treasury of the United States. It is difficult to see how any kind of action, at common law or otherwise, could have been maintained against the collector except the action recognized by the statutes as the method of obtaining a refund from the United States.

If the views above stated are correct, it is not necessary to determine whether or not the provisions of title 7 of the Act of 1936 are a substantial equivalent for the right and remedy theretofore existing. Congress has exercised the prerogative of sovereignty and has withdrawn the consent of the United States to be sued for the taxes in the manner theretofore authorized by law.

In enacting the legislation of 1936 Congress was attempting to prevent the perpetration of a great wrong, if not a downright fraud. It was not to be tolerated that a taxpayer, who had not borne the burden of the taxes but had so conducted his business that the money with which the tax was paid was actually contributed by others, should take out of the public treasury for his own benefit the amount of the tax. United States v. Jefferson Electric Mfg. Co., 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859. If the requirements of the Act of 1936 are so stringent that it will be impossible for an honest taxpayer to comply with them, reliance must be placed upon the belief that the Congress will act with that "fine sense of honor," with which, as pointed out by the Supreme Court in Moore Ice Cream Co. v. Rose, supra, a high-minded government has heretofore dealt with its taxpayers.

The suits, so far as they relate to past taxes, will be dismissed for want of jurisdiction.