Donald V. DONOHUE, Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. A. No. 6–71349.

United States District Court, E. D. Michigan, S. D.

Aug. 26, 1977.

Alan C. Harnisch, Kemp, Klein & Endelman & Ralls, P. C., Norman D. Orr, Southfield, Mich., for plaintiff.

Robert E. Richardson, Civil Division, U. S. Dept. of Justice, Washington, D. C., for defendant.

## OPINION

FEIKENS, District Judge.

On November 4, 1974, plaintiff Donald V. Donohue was indicted by a federal grand jury in the Eastern District of Michigan for violations of 18 U.S.C. §§ 1010 and 2(b). Specifically, the indictment charged in three counts that Donohue had wilfully and knowingly filed false statements with the Department of Housing and Urban Development on two applications for FHA mortgage insurance. Donohue was, at that time, a mortgage banker licensed to partici-

pate in the federal mortgage insurance programs administered through the Veteran's Administration and the Federal Housing Authority, a subsidiary agency of HUD, and a substantial amount of his business was insured through these programs. 12 U.S.C. § 1717(b)(1). From October, 1961 until May, 1974, plaintiff was employed by the Advance Mortgage Corporation of Detroit, Michigan. He subsequently moved to Phoenix, Arizona, and at the time of the indictment was employed by the Graham Mortgage Company of Phoenix as a branch manager. Upon arraignment, Donohue entered a plea of not guilty.

On November 13, 1974, the Acting Director of the HUD Regional Office in Phoenix notified Donohue that in light of his indictment and "pending completion of the aforesaid action and such legal proceedings as may ensue, you are suspended from participation in the H.U.D./F.H.A. programs." As a result of this notice and, allegedly, some further and more direct pressure by local HUD officials, plaintiff was discharged by the Graham Mortgage Company. On November 18, 1974, Donohue was informed by the Detroit Regional Office of HUD that his indictment had resulted in an "Unsatisfactory Risk Determination" which required that office to reject any of his future applications for FHA mortgage insurance. On December 30, 1974, Donohue was informed by the Washington Office of HUD, through the Acting Assistant Secretary, that he was temporarily suspended from all participation in HUD programs pending resolution of the indictment.

In response, Donohue notified HUD officials in the Phoenix and Washington offices that he desired an immediate hearing on his license suspensions. On November 18, 1974, he wrote a letter to the Acting Director of the Phoenix office, stating:

> I am most anxious to clear myself of any irregularities the government believes I was a part of or party to. I, therefore, request a hearing and meeting with you at your earliest possible convenience.

Donohue subsequently flew to Phoenix where, at an informal meeting with HUD officials, he was told that nothing could be done with regard to his suspension until the criminal proceedings had run their course. On January 7, 1975, plaintiff wrote to the Acting Assistant Secretary of HUD at HUD's Washington office, acknowledging receipt of the notice of suspension and stating:

> Since I am presently unemployed and find it impossible to obtain employment under the circumstances, I therefore am requesting an immediate hearing with your office.

A hearing was scheduled by the Washington office for March 4, 1975, but prior to this date, plaintiff was informed by HUD's General Counsel that the hearing would not result in his reinstatement, since he was still under indictment. On this basis, Donohue elected to postpone the hearing until after the criminal charges against him had been resolved.

On May 5, 1975, plaintiff's indictment was voluntarily dismissed by the United States Attorney for the Eastern District of Michigan. The dismissal was based on certain evidence, supplied to the government by Donohue himself, showing that his signatures to the HUD documents for which he was indicted were forged. Donohue notified HUD of the dismissal on May 12, 1975. His suspension by the Washington office was rescinded on August 15, 1975; the Phoenix office rescinded its suspension on September 12, 1975; and the Detroit office rescinded its Unsatisfactory Risk Determination on October 10, 1975.

On June 28, 1976, plaintiff, still unemployed, filed this action against the federal government, seeking damages of $200,000 for the alleged deprivation of his constitutional rights. His original complaint, naming only the United States, claimed in three counts that his license to participate in the HUD/FHA mortgage insurance programs was a property and liberty interest protected by the due process clause of the Fifth Amendment, and that his license suspension without hearing was a violation of his due process rights which caused him to lose his present employment and any meaningful

opportunity for future employment as a mortgage banker.

Plaintiff further alleged that his procedural rights, as specified by HUD's own administrative regulations governing license suspensions, had been violated by his suspension without hearing. In particular, the complaint alleged that plaintiff's suspension by the Phoenix Regional Office of HUD was totally unauthorized under 24 C.F.R. § 24.12, which grants powers of suspension only to Assistant Secretaries of HUD. Furthermore, the Phoenix office never accorded plaintiff his right to a full hearing with counsel, guaranteed both by 24 C.F.R. §§ 24.10, 24.15,[1] and the Phoenix notice of suspension, itself. The Detroit Regional Office is alleged to have violated 24 C.F.R. § 200.200, which sets forth the grounds upon which an Unsatisfactory Risk Determination can be made:

§ 200.200 Basis of action.

Any Field Office Director may reject an application for mortgage insurance on the grounds of unsound credit or unsatisfactory past experience. Applications will be rejected where past experience with the proposed borrower, builder, or other participant in the mortgage transaction indicates that his previous conduct or method of doing business has been such that his participation in the transaction would make it unacceptable *from the underwriting standpoint of an insurer.* The Unsatisfactory Risk Determination action is usually temporary in nature and may be followed in aggravated cases by the application of section 512 procedures as set forth in § 200.190 et seq. (Emphasis added).

Plaintiff alleged that underwriting considerations were never considered by the Detroit office in his case.

Against the Washington office, plaintiff alleged a failure to provide him a meaningful opportunity for a hearing, as required by 24 C.F.R. § 24.15, and a failure to consider all relevant evidence in issuing the suspension, as required by 24 C.F.R. § 24.11:

§ 24.11 Suspension.

Suspension is a drastic action taken when there is suspicion of fraud or other criminal conduct in Government business or contractual dealings and, as such, shall not be based upon an unsupported accusation. A contractor or grantee is suspended pending investigation and appropriate action by the Department of Justice. In assessing whether adequate evidence exists for invoking a suspension, consideration shall be given to the amount of credible evidence which is available, to the existence or absence of corroboration as to important allegations, as well as to the inferences which may be properly drawn from the existence or absence of affirmative facts. *This assessment shall include an examination of basic documents, such as contracts, inspection reports, and correspondence.* A suspension may be modified whenever it is determined to be in the interest of the Government to do so. (Emphasis added).

---

1. § 24.15 Notice of suspension.

(a) The contractor or grantee concerned shall be furnished by registered or certified mail, return receipt requested, a written notice of the suspension by the appropriate Assistant Secretary *within 10 days after the effective date.* The notice shall state as follows:

\* \* \* \* \* \*

(5) The suspended party is entitled to request an opportunity to be heard and represented by counsel in accordance with § 24.10 of this part. § 24.10 Procedural requirements relating to the imposition of debarment.

\* \* \* \* \* \*

(3) Determination. Hearings shall be conducted by a Hearing Officer of the Department who shall be responsible for the fair and expeditious conduct of proceedings. The program office shall be represented by the General Counsel or his designee. A record shall be made of the proceeding and shall be made available to the parties upon request. After the contractor or grantee against whom action is proposed has been afforded an opportunity to be heard, the Hearing Officer shall make an initial written determination on the evidence presented. The Hearing Officer's determination shall be final unless reversed or modified within 30 days by the appropriate Assistant Secretary. Each determination shall become a part of the record. Notice of the final determination shall be given in writing, signed by the Assistant Secretary, and transmitted by registered or certified mail, return receipt requested. The determination shall be conclusive.

To the extent that these HUD regulations could be read to authorize his suspension merely upon indictment and without hearing, plaintiff further alleged the unconstitutionality of the regulations under the Fifth Amendment.

In response to the initial complaint, the United States moved for dismissal or summary judgment in the alternative, under Rules 12 and 56 of the Federal Rules of Civil Procedure, contending that the Federal Torts Claims Act, 28 U.S.C. § 1346, *et seq.,* was the exclusive remedy for plaintiff's alleged constitutional deprivations, and that plaintiff's claim was barred under the F.T.C.A. for failure to exhaust administrative remedies, 28 U.S.C. § 2675(b), and in all other respects by sovereign immunity. After a hearing on defendant's motion, held on November 3, 1976, the court deferred ruling and granted plaintiff leave to follow one or more of the following alternatives:

1) to show the court why the United States should not be dismissed from the suit as a party defendant;

2) to move the court to add additional parties or otherwise amend the complaint;

3) to have the complaint dismissed without prejudice.

Subsequently, plaintiff filed administrative tort claims with all three HUD offices, which were, in due course, denied. Plaintiff also moved to amend his complaint to add the Secretary of HUD and the Department of HUD as party defendants to the initial three counts and to add three alternative new counts against the United States under the Federal Tort Claims Act. The government filed briefs in opposition to the amendment of the complaint and in further support of its original motion to dismiss, contending that plaintiff's constitutional claims against HUD, the Secretary of HUD, and the United States were all barred by sovereign immunity and that plaintiff's tort claims against the United States were barred by the "discretionary function" and "due care" exclusions to the F.T.C.A. contained in 28 U.S.C. § 2680(a).[2] After a further hearing on May 4, 1977, the court granted plaintiff's motion to amend and took all other issues under advisement, pending the submission of further documentary exhibits and post-hearing briefs, which have since been filed.

■ Defendants' motion for dismissal or summary judgment as to plaintiff's federal tort claims is denied. Plaintiff's allegations of injury to his business reputation and earning ability, caused by HUD's alleged failure to follow their own procedural regulations in the suspension of his HUD mortgage insurance license states a valid cause of action against the United States under 28 U.S.C. § 1346(b) of the F.T.C.A., which provides:

(b) Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Plaintiff has now exhausted his administrative remedies with regard to all three claims, as required by 28 U.S.C. § 2675(a).

---

**2.** § 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title shall not apply to—

(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise, or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

Defendants' arguments for dismissal of these claims are based primarily on 28 U.S.C. § 2680(a), which exempts the United States from liability under the F.T.C.A. for any actions of its officials or employees taken with "due care" or pursuant to a "discretionary function." But defendants have made no showing to the court as yet that either of these exemptions apply. In support of its defense of "due care," the government·has submitted only a copy of plaintiff's indictment and an internal HUD administrative handbook (Compliance Handbook, February, 1973), which is said to authorize suspension without hearing upon indictment. This evidence is insufficient to establish due care for purposes of § 2780(a). In light of HUD regulations 24 C.F.R. §§ 24.11 and 24.15, which appear to require a hearing in all circumstances, and in light of the direct and urgent requests for a hearing in this particular case, there remains some doubt as to whether HUD officials exercised due care in suspending plaintiff merely on the basis of his indictment.

Even more doubt remains as to defendants' claim to the "discretionary function" exemption of 28 U.S.C. § 2680(a). This exemption has been uniformly construed to apply only in cases where government officials were acting at a policy making level or were exercising options of a policy nature, and not in cases where government officials were operating under mandatory statutes or regulations, which they had a legal duty to observe and implement, as plaintiff alleges here. *Dalehite v. United States,* 346 U.S. 15, 36, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Downs v. United States,* 522 F.2d 990, 996–997 (6th Cir. 1975); *Griffin v. United States,* 500 F.2d 1059, 1066 (3rd Cir. 1974). Defendants have offered no evidence as yet to show, for example, that the Acting Director of the HUD Phoenix Regional Office had the discretionary authority to suspend plaintiff under 24 C.F.R. § 24.12 or to show that the Acting Secretary of HUD at the Washington Office had the discretionary authority to ignore the apparently mandatory hearing requirements of 24 C.F.R. § 24.15. In short, important issues of fact as to both the "due care"

and "discretionary function" exemptions of 28 U.S.C. § 2680(a) remain unresolved and must await a fuller examination at trial. Plaintiff's federal tort claims are not subject to dismissal or summary judgment at this time.

Defendants' motion for dismissal or summary judgment as to plaintiff's claims against HUD and the Secretary of HUD for deprivation of his constitutional rights must be granted. As a jurisdictional basis for these claims, plaintiff has pleaded 28 U.S.C. § 1331 and 12 U.S.C. § 1702. Title 28 U.S.C. § 1331 is a general grant of jurisdiction over cases involving federal questions:

§ 1331. Federal question; amount in controversy; costs

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

Though it contemplates actions against the federal government, § 1331 is not, itself, a waiver of sovereign immunity against such actions, *Beale v. Blount,* 461 F.2d 1133, 1138 (5th Cir. 1972); *Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe,* 370 F.2d 529, 532 (8th Cir. 1967); *St. Louis Univ. v. Blue Cross Hospital Serv., Inc.,* 393 F.Supp. 367, 370 (E.D.Mo.1975); *Crowley v. United States,* 388 F.Supp. 981, 987 (E.D. Wis.1975), and in the absence of such a waiver, federal executive departments, such as HUD, are not subject to suit. *Larson v. Domestic and Foreign Commerce Corp.,* 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Blackmar v. Guerre,* 342 U.S. 512, 515, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Fort Worth National Corp. v. Federal Savings & Loan Ins. Corp.,* 469 F.2d 47, 54 (5th Cir. 1972).

Title 12, U.S.C., § 1702 is relied upon by plaintiff as a waiver of sovereign

immunity over HUD and the Secretary of HUD in this case. Section 1702 grants to the Secretary of HUD a number of enabling powers, including the authority to "sue and be sued in any court of competent jurisdiction, State or Federal." This provision was construed in *F.H.A. v. Burr*, 390 U.S. 242, 245, 60 S.Ct. 488, 84 L.Ed. 724 (1940) as a broad waiver of sovereign immunity, subjecting the Secretary of HUD to all forms of civil process to which an individual citizen is subject. Section 1702, however, is not a waiver of sovereign immunity for all civil suits against HUD and the Secretary of HUD. In particular, this provision, under 28 U.S.C. § 2679(a), is not a waiver of sovereign immunity as to those civil claims for damages against the Secretary which are cognizable under the Federal Tort Claims Act:

§ 2679. Exclusiveness of remedy

(a) The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

As stated in *Edelman v. Federal Housing Administration*, 382 F.2d 594, 596 (2d Cir. 1967):

Although the Commissioner (the FHA) is authorized by 12 U.S.C. Section 1702 to sue and be sued, the exclusivity provision of the Federal Tort Claims Act, 28 U.S.C. Section 2679, provides:

"The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive."

Thus, to the extent that appellant's claim is cognizable under 28 U.S.C. Section 1346(b), he must proceed under the FTCA. Section 1346(b) vests exclusive jurisdiction in the United States District Courts for all tort claims against the

United States. The language relevant to this suit is "claims * * * for money damages * * * for injury or loss of property * * * caused by the * * wrongful act or omission of any employee of the Government." Thus for appellant to recover on any claim sounding in tort, he must proceed under this Act.

*United States v. Gregory Park, Section II, Inc.*, 373 F.Supp. 317, 352 (D.N.J.1974); *Federal National Mortgage Assoc. v. Gregory*, 426 F.Supp. 282, 285 (E.D.Wis.1977); *Myers & Myers, Inc. v. United States Postal Service*, 527 F.2d 1252 (2d Cir. 1975). The legislative history of § 2679 supports this authority:

This section will place torts of "suable" agencies of the United States upon precisely the same footing as torts of "nonsuable" agencies. In both cases, the suits would be against the United States, subject to the limitations and safeguards of the bill; and in both cases the exceptions of the bill would apply either by way of preventing recovery at all or by way of leaving recovery to some other act, as, for example the Suits in Admiralty Act. It is intended that neither corporate status nor "sue and be sued' clauses shall, alone, be the basis for suits for money recovery sounding in tort. S.Rep.1400, 79th Cong., 2d Sess., at 33.

(Quoted in *Safeway Portland E. F. C. U. v. Federal Deposit Ins. Corp.*, 506 F.2d 1213, 1215 (9th Cir. 1974).

As already discussed, plaintiff's claims are cognizable under the F.T.C.A. Accordingly, they are otherwise barred by sovereign immunity and the exclusivity provisions of 28 U.S.C. § 2679.

▪▪▪ Defendants' motion for dismissal or summary judgment as to plaintiff's original constitutional claims against the United States must also be granted. Title 12 U.S.C. § 1702 is only a waiver of sovereign immunity to the extent of allowing the Secretary of HUD to sue and be sued in her own name. It is not a waiver of sovereign immunity for suits against the United States *eo nomine*. *United States v. Gregory Park, Section II, Inc.*, *supra* at 351.

Plaintiff argues that sovereign immunity is inapplicable to civil actions against the federal government raising bona fide constitutional claims, citing *Larson v. Domestic and Foreign Commerce Co.*, 337 U.S. 682, 703–704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); *Glidden Co. v. Zdanok*, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1961); *Garrett v. Hamtramck*, 503 F.2d 1236, 1247 (6th Cir. 1974). This argument, so far as the court can determine, is simply not the law. Justice Brandeis, speaking for a unanimous Supreme Court in *Lynch v. United States*, 292 U.S. 571, 580–581, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1933), stated that all civil damage claims against the federal government, constitutional or otherwise, are subject to the defense of sovereign immunity:

> [C]onsent to sue the United States is a privilege accorded, not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. *De Groot v. United States*, 5 Wall. [(72 U.S.)] 419, 432 [18 L.Ed. 700]. Compare *Darrington v. State Bank of Alabama*, 13 How. [(54 U.S.)] 12, 17 [14 L.Ed. 30]; *Beers v. Arkansas*, 20 How. [(61 U.S.)] 527–529 [15 L.Ed. 991]; *Gordon v. United States*, 7 Wall. [(74 U.S.)] 188, 195 [19 L.Ed. 35]; *Memphis & C. Railroad Co. v. Tennessee*, 101 U.S. 337 [25 L.Ed. 960]; *South & N.A. Railroad Co. v. Alabama*, 101 U.S. 832 [25 L.Ed. 973]; *In re Ayers*, 123 U.S. 443, 505 [8 S.Ct. 164, 31 L.Ed. 216]; *Hans v. Louisiana*, 134 U.S. 1, 17 [10 S.Ct. 504, 33 L.Ed. 842]; *Baltzer v. North Carolina*, 161 U.S. 240 [16 S.Ct. 500, 40 L.Ed. 684]; *Baltzer & Taaks v. North Carolina*, 161 U.S. 246 [16 S.Ct. 502, 40 L.Ed. 687]. The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced. It applies alike to causes of action arising under acts of Congress, *De Groot v. United States*, 5 Wall. [(74 U.S.)] 419, 431 [18 L.Ed. 700]; *United States v. Babcock*, 250 U.S. 328, 331 [39 S.Ct. 464, 63 L.Ed. 1011], and to those arising from some violation of rights conferred upon the citizen by the Constitution, *Schillinger v. United States*, 155 U.S. 163, 166, 168 [15 S.Ct. 85, 39 L.Ed. 108]. The character of the cause of action—the fact that it is in contract as distinguished from tort—may be important in determining (as under the Tucker Act) whether consent to sue was given. Otherwise it is of no significance. For immunity from suit is an attribute of sovereignty which may not be bartered away. (Emphasis added). (Footnote omitted).

Accordingly, defendants' motion for dismissal or summary judgment as to plaintiff's constitutional claims against the United States, HUD, and the Secretary of HUD is granted. In all other respects, defendants' motion is denied.